**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* FRED MAXEY CLONINGER,<br><br>**Plaintiff,**<br><br>v.<br><br>DYNCORP INTERNATIONAL INC.; DYNCORP INTERNATIONAL LLC; DELTA TUCKER HOLDINGS, INC.; AND NORTHROP GRUMMAN CORPORATION,<br><br>**Defendant.** | Civil Action No. 1:14-cv-00581 (RJL) |

**NORTHROP GRUMMAN CORPORATION'S MEMORANDUM TO SUPPLEMENT**
**ORAL ARGUMENT**

Anne B. Perry (D.C. Bar No. 447930)
Jonathan S. Aronie (D.C. Bar No. 443151)
Ryan E. Roberts (D.C. Bar No. 1002825)
SHEPPARD MULLIN RICHTER & HAMPTON
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006-6081
Tel. (202) 747-1900
Fax (202) 747-1901
aperry@sheppardmullin.com
jaronie@sheppardmullin.com
reroberts@sheppardmullin.com

Jamie S. Gorelick (D.C. Bar No. 913384)
Madhu Chugh (D.C. Bar No. 992122)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel. (202) 663-6000
Fax  (202) 663-6363
Jamie.Gorelick@wilmerhale.com
Madhu.Chugh@wilmerhale.com

*Attorneys for Northrop Grumman Corporation*

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ..................................................................................................... i

**TABLE OF AUTHORITIES** ...........................................................................................ii

**INTRODUCTION**........................................................................................................... 1

**I.     Count I Fails to State a Claim Under the False Claims Act or Plead Its
         Allegations with the Requisite Particularity**.................................................... 1

      **A.     Count I Fails to State a Claim that Northrop Knowingly
         Submitted a False Claim for Payment** ................................................. 2

            **1.     Relator Fails to Allege Northrop Acted with the Requisite
                 Scienter**............................................................................ 2

            **2.     Relator's Allegations Against Northrop Fail to Meet the
                 Materiality Requirement of the FCA**....................................... 6

      **B.     Count I Fails to Allege Fraud with the Requisite Particularity**........................ 8

**II.    Count III Fails to State a Claim that Northrop Retaliated Against
         Relator Under the False Claims Act**................................................................ 9

**III.   Count V Fails to State a Claim that Northrop Committed Tortious
         Interference** ...................................................................................... 12

**IV.    Relator's Claims Against Northrop Should be Dismissed with Prejudice** ................ 14

**CONCLUSION** ....................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Al-Saffy v. Vilsack*
827 F.3d 85 (D.C. Cir. 2015) ................................................................................10

*Carnithan v. Cmty. Health Servs., Inc.*
No. 11-cv-312, 2015 WL 925895 (S.D. Ill. Dec. 18, 2015) ...............................10, 11

*Clayton v. District of Columbia*
117 F. Supp. 3d 68 (D.D.C. 2015) .........................................................................10

*Shirvinski v. United States Coast Guard*
No. 1:09-CV-896 AJT TRJ, 2010 WL 4279254 (E.D. Va. Oct. 25, 2010),
*aff'd*, 673 F.3d 308 (4th Cir. 2012) ...................................................................13

*Southprint Inc. v. H3, Inc.*
208 F. App'x 249 (4th Cir. 2006) .......................................................................12, 13

*United States v. Sci. Applications Int'l Corp.*
626 F.3d 1257 (D.C. Cir. 2010) ...........................................................................6, 7

*U.S. ex rel. Folliard v. Govplace*
930 F. Supp. 2d 123 (D.D.C. 2013) .....................................................................1, 14

*U.S. ex rel. Worthy v. Eastern Maine Healthcare Sys.*
No. 14-cv-184, 2017 WL 211609 (D. Me. Jan. 18, 2017) ......................................11

*Universal Health Servs., Inc. v. United States ex rel. Escobar*
136 S. Ct. 1989 (2016) ........................................................................................4, 6, 7

<u>Statutes and Rules</u>

31 U.S.C. § 3730(h) ...............................................................................................10

Fed. R. Civ. P. 8(a) .................................................................................................1

Fed. R. Civ. P. 9(b) ..............................................................................................1, 8

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1

Fed. R. Civ. P. 15(a) ..............................................................................................14

**INTRODUCTION**

Northrop Grumman Corporation ("Northrop") moved to dismiss Counts I, III, and V of Relator's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) because the FAC fails to meet the requisite standards to plead (a) a plausible violation of any section of the False Claims Act ("FCA"), (b) the particularity of the alleged elements of a violation of the FCA against Northrop, (c) a valid claim for retaliation, or (d) a valid claim for tortious interference.  During Oral Argument, Relator's counsel not only failed to rebut the showing that the FAC's allegations regarding Northrop are irreconcilable with Relator's contentions that Northrop acted in violation of the FCA, but Relator's counsel also misstated, and even contradicted, the allegations contained in the FAC. Consequently, accepting all of Relator's factual allegations as true, Relator has not plead sufficient facts alleging a plausible claim that Northrop violated the FCA or that Northrop tortiously interfered with Relator's employment relationship.

**I.     Count I Fails to State a Claim Under the False Claims Act or Plead Its Allegations with the Requisite Particularity**

Liability under the FCA does not arise unless falsity, scienter, and materiality are each established. *See, e.g.*, *U.S. ex rel. Folliard v. Govplace*, 930 F. Supp. 2d 123, 127, 136-37 (D.D.C. 2013). Relator has acknowledged, both in his Opposition and during Oral Argument, that the FAC does not adequately state these required elements of an FCA violation against Northrop with the requisite particularity; instead he urges the Court to find the FAC alleges sufficient facts that Defendants, collectively, engaged in "schemes" to violate the FCA.

At Oral Argument, Relator again attempted to muddy the factual waters to survive the motion to dismiss by reiterating numerous alleged fraudulent schemes. However, none of these schemes contain factual allegations connecting Northrop to any conduct that constitutes an FCA

violation. Even accepting Relator's factual allegations as true, every FCA allegation fails to state

a claim because the FAC does not connect any violation to a claim for payment and alleges (1) at

worst, contractual or regulatory violations, (2) that Northrop was not aware of any false

statements or fraudulent conduct, and (3) that Northrop took remedial actions to address

DynCorp's performance issues. Relator did not alter these allegations during Oral Argument.

*See generally,* Tr. at 27-44.

> ### A. Count I Fails to State a Claim that Northrop Knowingly Submitted a False Claim for Payment

> #### 1.      Relator Fails to Allege Northrop Acted with the Requisite Scienter

Relator began Oral Argument relying on the same misguided assumptions as contained in

both the FAC and his Opposition. Tr. at 27. The central allegations in the FAC are that DynCorp,

as a subcontractor to Northrop, did not perform property management services adequately,

falsified records within its proprietary database, and actively concealed this alleged falsification

from Northrop.  *E.g.*, Tr. at 7, 33; *see also* FAC ¶¶ 82, 98-109, 111-119, 134 148-152, 191. The

FAC also alleges that Northrop, upon learning of DynCorp's performance issues, continuously

tried to obtain compliant performance, took a variety of remedial actions, and ultimately replaced

DynCorp. Tr. at 7-10.  The FAC simply fails to allege any facts that Northrop knowingly

participated in any fraudulent activity or scheme to defraud the Government.

In an attempt to overcome the lack of alleged facts with regard to Northrop, Relator

continued relying on the same unpersuasive premise, lumping defendants together as a single,

unified entity, claiming "***defendants*** do not dispute… that ***they*** failed miserably in fulfilling"

property management responsibilities, and that "***They***, indeed, acknowledge very serious

problems in ***their*** tracking and management of the government property with which ***they*** were

entrusted."  Tr. at 28 (emphasis added). Relator's unification of these two entities, however, is

inconsistent with the FAC's allegations. The majority of Relator's allegations not only refer

solely to DynCorp, but also make it implausible that Northrop and DynCorp acted in a unified

manner. *See generally,* Tr. at 28-44.

To justify consolidating defendants into one allegedly fraudulent entity, during Oral

Argument Relator's counsel again alleged "a scheme by which DynCorp billed Northrop and

Northrop billed the government for property-management services that were never provided."

Tr. at 30. The FAC's factual allegations do not support this assertion or provide a basis to find

Northrop Grumman violated the FCA. First, the FAC does not allege that the services "were

never provided." Tr. at 9-10, 50.  Second, the FAC alleges a pattern of Northrop conduct that is

utterly inconsistent with Relator's summary legal conclusion that Northrop acted with the

requisite scienter to defraud the Government. *E.g.*, Tr. at 7, 15, 33; *see also* FAC ¶¶ 82, 98-109,

111-119, 134 148-152, 191.

The Court astutely questioned Relator's counsel on Northrop's knowledge of DynCorp's

alleged fraudulent schemes, asking Relator's counsel on several occasions to clarify the extent to

which Relator is alleging Northrop knew of any property management services not being

provided. Relator's counsel could not provide a single allegation from the FAC that Northrop

knowingly billed for services that were not provided.  In fact, the Court pointedly questioned

Relator's counsel, asking "Are you alleging that when DynCorp did that, Northrop not only

billed [for property management services] but knew that those services weren't being provided?"

Tr. at 33.  In response, Relator's counsel stated "Mr. Cloninger heard from DynCorp employees

that both Northrop and DynCorp employees knew that these services ***weren't being effectively***

***[provided]***." Tr. at 34 (emphasis added). The allegation that Northrop knew that "services

weren't being effectively provided," however, does not make the requisite showing under the

FCA that Northrop knowingly billed for services that were not provided. The provision of inadequate services, as described by Relator, is nothing more than an allegation of a "garden-variety breach[] of contract or regulatory violation[]." *Universal Health Servs., Inc. v. United States ex rel. Escobar,* 136 S. Ct. 1989, 1994, 2003 (2016).

The Court further questioned Relator's counsel as to whether the FAC contained any allegations that "either DynCorp or Northrop gave false information in response to government inquiries as to whether or not they had provided the services they had been contracted to provide." Tr. at 37. In response, Relator's counsel stated the Government's request for a property book "kickstarted an effort by both Northrop and DynCorp to falsify information; to come up with a property book that looked compliant so that it wouldn't raise questions." Tr. at 37. This statement, however, which references the development of a manual property book, directly contradicts the allegations in the FAC. The FAC specifically alleges Northrop allowed DynCorp to develop a manual property book on the condition that DynCorp would clean up the data in DynMRO to provide a complete and accurate property book within a couple of months thereafter. Tr. at 51-52; FAC ¶ 358. The FAC further alleges that, as late as August 2013, Relator "believed that DynCorp was still planning to submit a compliant Property Book, disclose any remaining deficiencies, and identify losses to the Government in an Accountability Report." FAC ¶ 409. Therefore, the manual property book effort fails to support an allegation that Northrop knowingly submitting false claims; to the contrary, it reflects Northrop attempting to cure DynCorp's performance shortfalls.

The FAC not only fails to allege Northrop had any actual knowledge of DynCorp's alleged fraudulent activity, but also, it alleges Northrop took many steps to attempt to obtain compliant property management services. *See, e.g.,* Tr. at 5-11; FAC ¶¶ 199, 230, 234, 240, 250,

261, 265, 358, 413. The FAC alleges that Northrop issued a subcontract to DynCorp containing specific requirements for compliant performance in handling Government and contractor acquired property. Tr. at 6; *see also* FAC ¶¶ 59-60. Further, at the time of performance DynCorp possessed a "government certified" property management software system, DynMRO, which was to contain "all information" and track property in accordance with regulatory requirements. Tr. at 6; *see also* FAC ¶¶ 80-81. While Relator summarily claims Northrop was aware of DynCorp's alleged property mismanagement, the FAC acknowledges DynMRO was proprietary software, to which Northrop did not have access, and it was within this DynMRO system Relator alleges DynCorp falsified records. Tr. at 7-8; *see also* FAC ¶¶ 82, 134, 191. Thus, the FAC fails to allege facts that can support a finding that Northrop could have been aware of alleged fraud within the proprietary DynMRO system.

Further, the FAC alleges Northrop took a series of remedial actions to improve DynCorp's property management services. After learning of DynCorp's performance issues, Northrop pressed DynCorp to meet the subcontract's performance requirements by instructing DynCorp to find any missing property (FAC ¶ 99), advising DynCorp it would be responsible for compensating the Government for any lost property (FAC ¶ 230), and requiring DynCorp to hire subcontractor assistance at no additional cost to the Government (FAC ¶ 240). *See also* Tr. at 7-9.  Additionally, Northrop performed a preliminary inventory (the "Munger inventory") to mitigate potential harm to the Government (FAC ¶¶ 250, 261, 265) and issued its own corrective action plan (FAC ¶¶ 231, 358). Tr. at 7-9. The FAC does not allege Northrop had any basis to know a physical inventory would not produce a valid accounting of property. Tr. at 8. In contrast, a physical inventory would have revealed what was currently on site, a step to further help ascertain if and what property was lost. Tr. at 8. Moreover, even though Relator has alleged

the "Munger inventory" demonstrates Northrop was a participant in DynCorp's fraudulent

scheme, Relator conceded this "Munger inventory" was never submitted to the Government or

used in any way. Tr. at 13; FAC ¶¶ 272, 288.

In response to an inquiry from the Court, Relator's counsel conceded: "If [Northrop]

didn't know they were false but DynCorp caused them to make a false claim and DynCorp

knowingly did that, then DynCorp is liable under the statute, even if Northrop might not be." Tr.

at 41. Simply put, the FAC does not contain any allegations Northrop knowingly submitted false

claims to the Government.

### 2. Relator's Allegations Against Northrop Fail to Meet the Materiality Requirement of the FCA

Relator's allegations against Northrop also fail to meet the FCA's materiality standard,

despite Relator's insistence his allegations satisfy the standard articulated in *Universal Health*

*Services, Inc. v. United States ex rel. Escobar* ("*Escobar*"), 136 S. Ct. 1989, 2001 (2016) and

*United States v. Science Applications International Corp.* ("S*AIC*")*,* 626 F.3d 1257 (D.C. Cir.

2010). At Oral Argument, Relator alleged the D.C. Circuit in *SAIC* "held that a complaint for

implied false certification is actionable if the plaintiff can show the contractor withheld

information about its non-compliance with material contractual requirements." Tr. at 34. Further,

according to Relator, "In *Escobar*, the Supreme Court held that at least in some situation[s]…

omissions can be a basis for liability." Tr. at 34. Relator also claims the *Escobar* decision does

not require "specific representations." Tr. at 35.

Northrop disagrees. According to the Supreme Court,

> the implied certification theory can be a basis for liability, at least
> where two conditions are satisfied: first, the claim does not merely
> request payment, ***but also makes specific representations about***
> ***the goods or services provided***; and second, the defendant's failure
> to disclose noncompliance with material statutory, regulatory, or

> contractual requirements makes those representations misleading
> half-truths.

*Escobar*, 136 S. Ct. 1989, 2001 (2016) (emphasis added). Further, in *Escobar*, the Court required

the misrepresentation to be material to the Government's decision to pay. *See, e.g., Escobar*, 136

S. Ct. at 2003 ("if the Government pays a particular claim in full despite its actual knowledge

that certain requirements were violated, that is very strong evidence those requirements are not

material"); *Sci. Applications Int'l*, 626 F.3d at 1271 (the FCA materiality prong requires Relator

to "prove by a preponderance of the evidence that compliance with the legal requirement in

question is material to the government's decision to pay").

In the FAC, Relator openly acknowledges the Government was aware of DynCorp's

property management shortcomings and failure to meet the terms of its subcontract. *See, e.g.*, Tr.

10;  FAC ¶ 123 (Air Force began threatening to issue a Corrective Action Plan); ¶ 125 (noting

the Air Force was irate about issues with avionic test labs over a period of five years); ¶ 147

(stating the Air force "decided not to wait any longer on DynCorp for a functioning Avionics test

lab"); *id.* ¶ 187 (Air Force asking why delivery of many items was past due); ¶ 215 (Government

directed military personnel on how to curtail fuel theft); ¶¶ 285-286 (Northrop told Contracting

Officer Trudeau they needed time to produce a property book).  Despite the Government's

knowledge of DynCorp's performance issues, Relator makes no allegation that the Government

refused to pay any invoice including charges for property, fuel, or property management

services. Under *Escobar*, this is strong evidence that the performance issues were not material,

and Relator has not alleged other factors that could overcome this presumption, such as where

the provision allegedly violated is an express condition of payment or the Government "regularly

pays a particular claim in full despite its actual knowledge that certain requirements were

violated." *Escobar*, 136 S. Ct. at 2003-04.

**B.      Count I Fails to Allege Fraud with the Requisite Particularity**

Northrop also moved to dismiss all alleged violations under Count I of the FAC because

Relator failed to allege his claims with particularity required by Federal Rule of Civil Procedure

9(b). The FAC does not (1) identify any particular claims for payment, the amounts that were

allegedly false, by whom they were submitted, or when these claims were submitted; (2) specify

Northrop's involvement in any fraudulent scheme, or (3) make any particularized allegations

regarding what property was lost as a result of DynCorp's property management practices. Tr. at

13. In short, Relator's FAC does not connect the allegations made to specific false claims for

payment.

The Court questioned Relator's counsel on this exact point, asking "What about Ms.

Perry's contention that there's no linkage between the allegations being made and specific claims

under the False Claims Act?" Tr. at 29-30. In response, Relator's counsel could not provide a

single example of a false claim submitted for payment. Tr. at 30. Instead, Relator's counsel again

attempted to rely on Northrop's participation in "at least four different categories" of "schemes"

to defraud the Government. Tr. 30. Relator's Opposition, however, identifies only three schemes,

none of which connect Northrop to a false claim for payment. *E.g.*, NG Reply at 16-18.

First, despite Relator's counsel's statements at Oral Argument that Northrop knowingly

billed the Government for property management services not provided, the FAC contains no

such allegations. The FAC alleges 25 DynCorp employees were assigned to Relator to perform

property management but while all were working on the contract, they were either not

performing competently (in Relator's view) to meet contract requirements, or they were

performing non-property management services. Tr. 30-32; FAC ¶¶ 116-119. The FAC does not

include a single allegation Northrop knowingly participated in a scheme to bill the Government

for hours not worked under its cost reimbursement contract. Tr. 50.

Second, the FAC does not allege Northrop falsified data, but rather Relator alleges that

"**DynCorp** devised a scheme, discovered by Relator, to systematically falsify records." Opp'n. at

31 (emphasis added). The FAC does not allege Northrop knew of or participated in this scheme,

in part, undoubtedly, because the FAC alleges these falsifications were done within DynMRO, a

system to which the FAC concedes Northrop had no access. Tr. at 51; MTD at 8-9; 16-19.

Third, during Oral Argument, Relator's counsel alleged that "Northrop and DynCorp

billed the government $500 million, roughly" for an MIS system that was not provided. This is a

misstatement of the FAC. The FAC states "DynCorp agreed to develop and implement a new

management information system, called MIS, that it would turn over to the Afghan government

at the end of the program" (FAC ¶¶ 82-83), and that "DynCorp spent (and billed the Government

through Northrop) for [sic] approximately $5,000,000 on the project, for which the Government

***never received a usable [MIS] system***" (FAC ¶ 166 (emphasis added)); *see also* Tr. at 52.

Nowhere in the FAC does Relator allege Northrop knowingly billed the Government for a fully

functional MIS that was never provided or billed for costs not incurred in its development.

In sum, the FAC simply does not connect any allegations to Northrop knowingly

submitting specific false claims for payment or knowingly participating in a scheme to defraud

the Government.

## II.   Count III Fails to State a Claim that Northrop Retaliated Against Relator Under the False Claims Act

Relator fails to state a claim Northrop retaliated against him under the FCA because

Relator has failed to allege any employment, agent, or independent contractor relationship with

Northrop, as required by the FCA. 31 U.S.C. § 3730(h). Relator asks this Court to expand the definition of employer under the FCA by arguing Northrop was Relator's "joint employer."

At Oral Argument, Relator's counsel simultaneously acknowledged they "need to allege that [Relator] was an employee, contractor, or agent of Northrop" and urged the Court to apply the "joint employer theory" to hold Northrop liable under the FCA retaliation provisions. Tr. at 47. Relator claimed "We cited multiple D.C. cases, including cases from the D.C. Circuit Court of Appeals, as well as other cases, all of which have denied motions to dismiss based on allegations of joint employer," and criticized Northrop for failing to cite to authority proving that theory should not apply. Tr. at 47.

The two cases from this jurisdiction cited by Relator's counsel during Oral Argument have no relation to the facts at hand. Relator cites *Al-Saffy v. Vilsack*, 827 F.3d 85 (D.C. Cir. 2015) and *Clayton v. District of Columbia*, 117 F. Supp. 3d 68 (D.D.C. 2015) to support his joint employer argument. Neither case, however, involved the FCA, but rather were employment actions brought under Title VII. Relator has not provided any D.C. Circuit authority, in his Opposition or at Oral Argument, for extending a Title VII employer theory to the FCA.

Relator also encourages this Court, both in his Opposition and at Oral Argument, to rely on two unpublished decisions outside the D.C. Circuit as authority for applying his joint employer theory to the FCA. The first, *Carnithan v. Community Health Services, Inc.*, No. 11-cv-312, 2015 WL 925895, at *4-5 (S.D. Ill. Dec. 18, 2015), is an FCA retaliation case from the Southern District of Illinois. While Relator asserts *Carnithan* applied the "joint employer analysis" (Tr. at 47), the fact is *Carnithan* never discusses a "joint employment" relationship as contemplated under Title VII. Rather, the court discusses the applicability of the FCA retaliation provisions under the 2009 amendments extending to "***employment-like***" relationships. *Id.* at *4

("[t]he question for the Court is whether Carnithan had an employment-like relationship with

CHS Inc. and CHSPSC."). Under the 2009 amendments, the court found an "employment-like"

relationship existed between CHSPSC, a subsidiary, and its parent company CHS Inc., because

the parent had sufficient control over the employee of the subsidiary, including the ability to hire

and fire the employee. *Id.* at \*4-\*5.

These facts are in stark contrast to those alleged in the FAC. The FAC does not allege

DynCorp is Northrop's subsidiary. Further, the FAC does not allege facts reflecting Northrop

had authority to hire or fire Relator, but rather relies on dubious legal conclusions Northrop

terminated Relator that are undermined by other allegations. FAC ¶ 423. Indeed, the FAC

specifically alleges DynCorp made the decision not to renew Relator's contract or hire him for

other positions. FAC ¶¶ 422, 434-438.

Relator also urges the Court to rely on an unpublished FCA retaliation case from Maine,

*United States ex rel. Worthy v. Eastern Maine Healthcare System*, 2017 WL 211609, at \*32 (D.

Me. Jan. 18, 2017).[1] Tr. at 47. In *Worthy*, the relator alleged a hospital and its two subcontractors

were all joint employers under the FCA. Applying the joint employer doctrine as established in

Maine, that court found one of the two subcontractors was a joint employer with the hospital

over the relator because of its infused management structure with the hospital, as some

subcontractor employees reported directly to hospital staff and others directly managed hospital

staff. *Id.* Additionally, the relator's direct supervisor was in fact a subcontractor employee. *Id.*

---

[1] Relator claimed at Oral Argument the cases relied on, including *Worthy*, "refused to grant motions to dismiss based on allegations of a joint employer relationship." This is incorrect. In *Worthy*, the relator alleged both subcontractors Accretive and CHMB were joint employers, along with the hospital. The court found the relator's allegations regarding the second subcontractor, CHMB, to be insufficient to survive a motion to dismiss for containing mere conclusory statements, and *dismissed* the relator's claims under the FCA retaliation provisions. *Id.*

The facts here could not be more different. DynCorp and Northrop did not have an infused management structure – Northrop and DynCorp are separate entities operating under separate chains of management. Additionally, the FAC alleges DynCorp hired the Relator, negotiated the terms and conditions of his employment contract, assigned him the position as a logistics manager, paid him, provided his benefits, assigned subordinates to him, supervised his work, did not renew Relator's employment contract, and declined to hire him for other positions. *Id*. ¶¶ 20, 85-90. Further, the FAC specifically alleges Relator had two supervisors, both of whom were DynCorp employees. FAC ¶ 87 ("[Rebecca ('Becky') McClendon, DynCorp Senior Logistics Manager] was Relator's direct logistics supervisor on the corporate side (*i.e.*, his supervisor in the United States); in country, his direct supervisor was Mark Fisher, DynCorp's Project Manager (in Kabul) on CNGS"). Relator's counsel's statements during Oral Argument that Northrop had "control over the terms and conditions of employment" and that "Northrop controlled or directed the work" of Relator are contradicted directly by the allegations contained in the FAC.

Moreover, as noted during Oral Argument, this Court does not need to reach this issue because the FAC fails to allege facts that support even a finding of joint employment.  Tr. at 15; Northrop Reply at 18-21.

III.     **Count V Fails to State a Claim that Northrop Committed Tortious Interference**

Relator has also failed to allege facts consistent with a claim for tortious interference against Northrop. During Oral Argument, Relator's counsel stated Relator must only allege sufficient facts to show a "probability of future employment" to have an actionable claim for tortious interference under Virginia law. Tr. at 48. Under Virginia law, Relator must allege sufficient facts to establish an "objective expectation of future business." *Southprint Inc. v. H3,*

*Inc.*, 208 F. App'x 249, 253 (4th Cir. 2006). Additionally, merely contemplating keeping

someone on a project or inviting them to apply for positions does not create a sufficient

probability of future employment to support an actionable claim under Virginia law. *Shirvinski v.*

*U.S. Coast Guard*, No. 1:09-CV-896 AJT TRJ, 2010 WL 4279254, at *7 (E.D. Va. Oct. 25,

2010), *aff'd*, 673 F.3d 308 (4th Cir. 2012) (finding a lack of the "requisite certainty required to

establish a business expectancy" where the plaintiff contended that the Coast Guard had

"contemplated keeping him on the Project").

 None of the allegations in the FAC rise to the level of establishing an "objective

expectation of future business." In support of their argument, Relator's counsel stated "he was

specifically told by DynCorp that he is slated to be hired" and despite his position being

eliminated "he would simply be moved to another position." Tr. at 49. The controlling caselaw is

clear – mere possibility that the employment relationship will continue beyond the term of the

contract is not sufficient to support a finding of an "objective expectation of future business." As

articulated in *Southprint Inc.*, simply because a party has done business with another in the past

does not guarantee that business will continue in the future. *Southprint Inc. v. H3, Inc.*, 208 F.

App'x at 253.

 The facts here are clear. Northrop replaced DynCorp as a subcontractor, which it was

legally entitled to do under contract. This eliminated Relator's position. Relator argued at Oral

Argument that "he would have continued working on the same base and the same project" if not

for Northrop's interference. Tr. at 49. Yet Relator has proffered no allegations to support this

conclusion or to support a finding that Northrop lacked the contractual right to replace DynCorp.

In fact, counsel for his employer, DynCorp, concurred with the very clear facts of the case: "The

property management function was transferred from DynCorp to another company by Northrop

Grumman, relator['s] position was eliminated, as were many other DynCorp positions related to property management, the relator did not continue in his position because his position no longer existed." Tr. at 26.

### IV.    Relator's Claims Against Northrop Should be Dismissed with Prejudice

As discussed during Oral Argument (*see* Tr. at 16-17), Northrop understands that under Fed. R. Civ. P. 15(a) the court should freely give leave to amend "when justice so requires." Here, justice requires the opposite – that Relator's claims against Northrop be dismissed with prejudice. In cases where further amendments to the complaint would be futile, this Court has dismissed FCA cases with prejudice. *See, e.g.*, *Govplace*, 930 F. Supp. 2d at 127, 136-37 (dismissing FCA case with prejudice where plaintiff could not "introduce any evidence that would create an inference of knowing fraud").

As discussed at Oral Argument, the only cure for the clear and abundant defects in the FAC would be a wholesale repudiation of a litany of allegations that negate any possibility of liability for Northrop under the FCA. Tr. at 16-17. In his Opposition, Relator merely asks that the Court give him leave to amend but does not allege what it can or would change in order to rectify the fact that it has pled facts that affirmatively negate liability. Wholesale revisionism and repudiation is not what justice requires and would waste the resources of this Court. Therefore Northrop respectfully requests Relator's claims against Northrop be dismissed with prejudice.

### CONCLUSION

All of Relator's FCA allegations against Northrop fail to satisfy the pleading standards. For the reasons set forth above, defendant Northrop Grumman Corporation respectfully requests the Court dismiss with prejudice Counts I, III, and V of Relator's First Amended Complaint

because the alleged facts are inconsistent with liability under the FCA and, thus, a further

amendment of the complaint would be futile.

Respectfully submitted,

/s/ Anne B. Perry

**Anne B. Perry (D.C. Bar No. 447930)**
**Jonathan S. Aronie (D.C. Bar No. 443151)**
**Ryan E. Roberts (D.C. Bar No. 1002825)**
**SHEPPARD MULLIN RICHTER &**
**HAMPTON**
**2099 Pennsylvania Ave., NW, Suite 100**
**Washington, DC 20006-6081**
**Tel. (202) 747-1900**
**Fax (202) 747-1901**
**aperry@sheppardmullin.com**
**jaronie@sheppardmullin.com**
**reroberts@sheppardmullin.com**

**Jamie S. Gorelick (D.C. Bar No. 913384)**
**Madhu Chugh (D.C. Bar No. 992122)**
**WILMER CUTLER PICKERING HALE**
**AND DORR LLP**
**1875 Pennsylvania Avenue NW**
**Washington, DC 20006**
**Tel. (202) 663-6000**
**Fax  (202) 663-6363**
**Jamie.Gorelick@wilmerhale.com**
**Madhu.Chugh@wilmerhale.com**

Dated: September 11, 2017                    *Attorneys for Northrop Gruman*
                                            *Corporation*

-15-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2017, the foregoing Memorandum to Supplement

Oral Argument, which was filed through the ECF system, will be sent electronically to the

following attorneys for Relator.

**Avi Lev Kumin**
KATZ, MARSHALL & BANKS, LLP
1718 Connecticut Avenue, NW
Sixth Floor
Washington, DC 20009
(202) 299-1140
Fax: (202) 299-1148
Email: kumin@kmblegal.com

**David Henry Thompson**
COOPER & KIRK, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
(202) 220-9600
Fax: (202) 220-9601
Email: dthompson@cooperkirk.com

**Charles Justin Cooper**
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9660
Fax: (202) 220-9601
Email: ccooper@cooperkirk.com

**Harold Smith Reeves**
COOPER & KIRK, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
(202) 220-9600
Fax: 202-393-5719
Email: hreeves@cooperkirk.com

**Colette Gianna Matzzie**
PHILLIPS & COHEN, LLP
2000 Massachusetts Avenue, NW
1st Floor
Washington, DC 20036
(202) 833-4567
Fax: (202) 833-1815
Email: cmatzzie@phillipsandcohen.com

**Vincent John Colatriano**
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 220-9600
Fax: (202) 220-9601
Email: vcolatriano@cooperkirk.com

/s/ Anne B. Perry
**Anne B. Perry (D.C. Bar No. 447930)**
**SHEPPARD MULLIN RICHTER &**
**HAMPTON**
**2099 Pennsylvania Ave., NW, Suite 100**
**Washington, DC 20006-6081**
**Tel. (202) 747-1900**
**Fax (202) 747-1901**
**aperry@sheppardmullin.com**