**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. FRED MAXEY CLONINGER Plaintiffs, v. DYNCORP INTERNATIONAL INC.; DYNCORP INTERNATIONAL LLC; DELTA TUCKER HOLDINGS, INC.; AND NORTHROP GRUMMAN CORPORATION Defendants. | Civil Action No. 14-CV-00581 (RJL) |

**POST-HEARING MEMORANDUM OF DYNCORP INTERNATIONAL INC.,**
**DYNCORP INTERNATIONAL LLC, AND DELTA TUCKER HOLDINGS, INC.**
<u>**IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

David M. Nadler (Bar No. 402705)
Steven J. Roman (Bar No. 392959)
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201
DNadler@BlankRome.com

*Counsel for DynCorp International Inc.,*
*DynCorp International LLC, and Delta*
*Tucker Holdings, Inc.*

# CONTENTS

I.   ALL COUNTS SHOULD BE DISMISSED AGAINST DYNCORP
     INTERNATIONAL INC. AND DELTA TUCKER HOLDINGS, INC. .......................... 1

II.  COUNT I SHOULD BE DISMISSED BECAUSE RELATOR HAS
     FAILED TO PLEAD A CLAIM UNDER EACH OF THE FIVE FCA
     VIOLATIONS HE ASSERTS ............................................................................. 1

     A.   Relator's Arguments Cannot Save the "Shotgun-Style" Complaint ......................... 2

     B.   Relator Fails to Link his Property and Inventory Allegations to a Properly
          Pled FCA Violation ..................................................................................... 4

     C.   Relator's FCA Claims Must be Dismissed Because They Are Based On
          FAR and DFARS Clauses That Were Not Included in DI's Subcontract .................. 6

     D.   Count I Otherwise Fails to State a Claim for an FCA Violation ............................... 9

III. COUNT II SHOULD BE DISMISSED BECAUSE RELATOR HAS FAILED
     TO STATE A CLAIM FOR RETALIATION .................................................... 13

IV.  COUNT IV SHOULD BE DISMISSED BECAUSE RELATOR HAS FAILED
     TO ALLEGE A WRONGFUL DISCHARGE UNDER VIRGINIA LAW .................. 14

V.   CONCLUSION .......................................................................................... 15

## AUTHORITIES

## CASES

*U.S. ex rel. Barko v. Halliburton Co.,*
  -- F. Supp. 3d --, 2017 WL 1018309 (D.D.C. Mar. 14, 2017).........................................1, 9

*U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.,*
  251 F. Supp. 2d 28 (D.D.C. 2003) .........................................................................................3

*U.S. ex rel. Doe v. Health First, Inc.,*
  2016 WL 3959343 (M.D. Fla. July 22, 2016) ......................................................................3

*U.S. ex rel. Folliard v. CDW Technical Services, Inc.,*
  722 F. Supp. 2d 20 (D.D.C. 2010) .......................................................................................8

*U.S. ex rel. Harris v. Bernad,*
  275 F. Supp. 2d 1 (D.D.C. 2003) .........................................................................................3

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.,*
  498 F. Supp. 2d 25 (D.D.C. 2007) .......................................................................................1

*Jiggetts v. D.C.,*
  319 F.R.D. 408 (D.D.C. 2017)..............................................................................................3

*United States v. Klausner Lumber One, LLC,*
  2016 WL 7366891 (M.D. Fla. Dec. 2, 2016).......................................................................2

*Pencheng Si v. Laogai Research Foundation,*
  71 F. Supp. 3d 73 (D.D.C. 2014) .........................................................................................2

*U.S. ex rel. Siewick v. Jamieson Sci. & Engineering, Inc.,*
  214 F.3d 1372 (D.C. Cir. 2000) ...........................................................................................7

*Silverthorne v. Yeaman,*
  668 Fed. App'x 354 (11th Cir. 2016) ..................................................................................3

*Twigg v. Triple Canopy, Inc.,*
  2010 WL 2245511 (E.D. Va. June 2, 2010) ......................................................................15

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co.,*
  389 F.3d 1251 (D.C. Cir. 2004)............................................................................................2

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.,*
  525 F.3d 370 (4th Cir. 2008) ...............................................................................................9

**STATUTES**

False Claims Act, 31 U.S.C. § 3729(a)(1)(B)...........................................................................8, 11

False Claims Act, 31 U.S.C. § 3729(a)(1)(G)..............................................................................12

**RULES AND REGULATIONS**

Federal Acquisition Regulation ("FAR") 52.245-1 ...........................................................5, 11, 12

Federal Rule of Civil Procedure 9(b)..................................................................................1, 2, 3

Pursuant to the Court's instructions at the conclusion of the August 2, 2017 hearing in this case ("Hearing"), Defendants DynCorp International LLC ("DI"), DynCorp International Inc., and Delta Tucker Holdings, Inc. submit this post-hearing memorandum in support of their Motion to Dismiss Relator's First Amended Complaint.

## I.    ALL COUNTS SHOULD BE DISMISSED AGAINST DYNCORP INTERNATIONAL INC. AND DELTA TUCKER HOLDINGS, INC.

As an initial matter, Counsel for the Relator did not dispute at the Hearing, or in his Memorandum in Opposition to the Motion to Dismiss ("Opposition" or "Opp."), Dkt. No. 51, that a valid claim has not been pled against DynCorp International Inc. and Delta Tucker Holdings, Inc.  Opp. at 74 n.40.  Accordingly, all claims against these two entities should be dismissed.

## II.   COUNT I SHOULD BE DISMISSED BECAUSE RELATOR HAS FAILED TO PLEAD A CLAIM UNDER EACH OF THE FIVE FCA VIOLATIONS HE ASSERTS

As demonstrated at the Hearing, Count I of the Amended Complaint ("Complaint") should be dismissed, because it fails adequately to plead against DI valid causes of action under the False Claims Act ("FCA"), much less do so with the particularity required by Federal Rule of Civil Procedure 9(b).  Specifically, the Complaint does not allege the required "who, what, when, where, and how" of any alleged FCA violation, and it does not allege, even through its recitation of purportedly fraudulent "schemes," the required link of allegedly fraudulent activity to actual claims for payment.  At most, even assuming all of its allegations are true, the Complaint paints a picture of alleged gross mismanagement of property recast as fraudulent conduct, but "[t]he FCA is not a catchall anti-fraud provision; it only goes after claims that are false, not claims submitted while fraud is afoot."  *U.S. ex rel. Barko v. Halliburton Co.*, 2017 WL 1018309, at *8 (D.D.C. 2017); *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498

F. Supp. 2d 25, 70 (D.D.C. 2007).  Neither Relator's arguments at the Hearing nor in his

Opposition can cure these defects, because the Complaint must be judged on its four corners

alone.  *See U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1257

(D.C. Cir. 2004).  As discussed below, Relator's pleading deficiencies are compounded by an

impermissible "shotgun-style" Complaint, which combines in one count five separate FCA

provisions – all with different elements and pleading standards – and alleges that all of his

439 paragraphs of allegations support them in some unspecified way.  For each and all of these

reasons, the Court should dismiss Count I.

### A.    Relator's Arguments Cannot Save the "Shotgun-Style" Complaint

Complaints cannot present a puzzle in which the opposing party and the Court must

attempt to untangle or restructure hundreds of alleged facts and then tie them to multiple

statutory provisions that were allegedly violated.  That is, however, exactly the type of "shotgun-

style" pleading Relator sought to save at the Hearing, but he did so essentially by arguing that the

Complaint is sufficient because it identifies 40 people who were allegedly involved in fraudulent

activity, together with a "lengthy chronological recitation of historical facts."  Transcript of

August 2, 2017 Hearing ("Tr.") at 43:13-44:5.  The Federal Rules require more and, in particular,

require FCA plaintiffs to link well-pled allegations of fraudulent activity to specific false claims

for payment, false records or statements, reverse false claims, conversion, or a conspiracy.  *See,*

*e.g.*, *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 85 (D.D.C. 2014) (presenting a

"swirl of facts" regarding a defendant's alleged conduct, without linking those allegations to

specific claims for payment or specific false statements to the Government, fails to satisfy the

requirements of Rule 9(b)); *United States v. Klausner Lumber One, LLC*, 2016 WL 7366891

at *3 (M.D. Fla. Dec. 2, 2016) (dismissing complaint where "it is virtually impossible to know

which allegations of fact are intended to support which claim(s) for relief") (citations omitted);

*see also Silverthorne v. Yeaman*, 668 Fed. App'x 354 (11th Cir. 2016) (affirming dismissal of shotgun pleading).

      While Relator argued that the Complaint was sufficient because of its allegations of fraudulent "schemes," such allegations can save an FCA claim only where – unlike here – relators "set out the details of the specific scheme and its falsehoods, as well as supply the time, place, and content of false representations, and link that scheme to claims for payment made to the United States." *U.S. ex rel. Barrett v. Columbia/HCA Heathcare Corp.*, 251 F. Supp, 2d 28, 34-35 (D.D.C 2003); *see U.S. ex rel. Doe v. Health First, Inc.*, 2016 WL 3959343 at *4 (dismissing "shotgun-style" FCA complaint under Rule 9(b) where complaint spent 192 paragraphs alleging fraudulent scheme but failed to link the scheme to specific claims submitted to the government); *cf. U.S. ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 8 (D.D.C. 2003) (finding sufficient the allegations of fraudulent schemes because the Relator alleged 12 examples showing specific discrepancies between the services provided and the services billed that exemplified the fraudulent scheme).

      Relator argued at the Hearing that Count I need not link the factual allegations to any particular type of alleged FCA violation, or link any alleged fraud to specific claims for payment, because the Complaint purportedly provided enough information to allow Defendants to respond. Tr. at 44:14-18.  However, the fact that a defendant has undertaken the "yeoman's work" of trying to do frame a response does not shift the burden away from the Relator at this stage of the case. *Jiggetts v. D.C.*, 319 F.R.D. 408, 418 (D.D.C. 2017) (stating that defendants' "yeoman" effort to make sense of the Complaint does not relieve the plaintiffs' of their pleading obligations under the Federal Rules).  The crux of the problem is that, in preparing its defense to any one of Relator's more than 400 paragraphs of factual allegations, DI must guess which type of FCA

violation Relator believes are supported by an unspecified set of allegations, and then work to prepare a defense to that theory, while also calculating the likelihood that the allegation may be intended to support other theories.  This task must be performed for the many paragraphs for which there is no apparent FCA violation to which the allegations could possibly be linked, as well as those for which a particular theory seems to be more apparent, even if critical elements of the claim seem to be entirely missing from the Complaint.

In short, because Relator did not do the work of explaining how his "chronological recitation of historical facts" relates to any particular FCA violation and to any specific claim for payment, DI and the Court are forced to attempt to do this work for Relator, and, if the Complaint prevails, DI must prepare a defense as if any particular allegation could support any FCA theory.  This subverts the purpose of a motion to dismiss, which is designed to weed out inadequate claims or otherwise narrow the field of issues for discovery and summary judgment purposes.  Accordingly, DI submits that the Court should reject Relator's effort to shift the burden of untangling and/or restructuring the Complaint from Relator to the Defendants and, ultimately, the Court.

**B.      Relator Fails to Link his Property and Inventory Allegations to a Properly Pled FCA Violation**

As demonstrated at the Hearing, Relator's allegations regarding the handling of "push packs" and the preparation of the so-called "Munger inventory" are prime examples of how his shotgun-style pleading regarding alleged property and inventory mismanagement is inadequate for purposes of alleging FCA violations.  There are no alleged FCA violations to which the "push pack" and "Munger inventory" allegations are relevant.  *See* Tr. at 18:22-21:18.  However, the subject matter areas that could be covered during the Hearing are far from the only illustrations of this pleading deficiency.

4

For example, while Relator alleges at length that DI did not do enough to safeguard the fuel it procured for use on the CNTPO program, Relator's actual allegations demonstrate he has not plausibly alleged a fuel-related FCA claim.  In the first place, Relator acknowledges in the Complaint that the theft of fuel was widespread in Afghanistan and that the Government was aware of this problem.  Compl. ¶ 215.  He then sets out the circumstances of the thefts of DI-procured fuel, but he makes no allegation that DI improperly presented claims for payment of fuel that had been stolen or that DI reduced an existing obligation to repay the Government for stolen fuel.  Even if he had made such allegations, there could be no presentment or reverse-false-claim violations arising out of such (missing) allegations, because DI is presumptively *not* responsible for lost or stolen property under the relevant property management clauses of the Federal Acquisition Regulation ("FAR"), even assuming this clause applied to DI.  *See* FAR 52.245-1(h)(1).

Moreover, Relator never alleges that DI made any false records or statements to the Government in connection with the lost or stolen fuel, and, as for an FCA conversion claim, Relator never makes any allegation that the fuel was converted to DI's use, or that DI failed to deliver the fuel it had to the Government.  Indeed, the only plausible reading of Relator's allegations is that the fuel was being stolen after it was delivered to Government installations. *See, e.g.*, Compl. ¶ 215.  Thus, when DI and the Court try to link purportedly fraudulent activity to purportedly false claims – links Relator should have pled for his fuel-related allegations – and then compare the conceivable links to all of the possible FCA causes of action, the conclusion must be that Count I does not plausibly state any fuel-related claim.

In its Memorandum in Support of the Motion to Dismiss ("DI Memorandum" or "DI Mem."), Dkt. No. 43-1, and in its Reply Memorandum ("DI Reply"), Dkt. No. 54, DI

identified many other examples where, in the absence of guidance in the Complaint, DI has compared the Relator's subject matter allegations to all five of the potentially applicable FCA violations and demonstrated why these allegations fail to state, much less state with the required particularity, any valid FCA violation.  These examples include:

- Relator's general allegation that DI grossly mismanaged property, DI Mem. at 24-25, 34, DI Reply at 10, 13, 14-17;

- Relator's allegation that DI falsified records to indicate that property had been delivered in Afghanistan before it was shipped, DI Mem. at 29;

- Relator's allegation that DI failed to properly dispose of unserviceable and surplus property, DI Reply at 12; and

- Relator's allegation that DI failed to deliver equipment needed for Avionics test labs in Afghanistan, DI Mem. at 33.

DI has demonstrated that the Relator fails to state a claim with these subject matter allegations in connection with any conceivable FCA violation, and so they should be dismissed.

**C.      Relator's FCA Claims Must be Dismissed Because They Are Based On FAR and DFARS Clauses That Were Not Included in DI's Subcontract**

As demonstrated at the Hearing and explained in the DI submissions in support of its motion to dismiss, Relator's FCA claims against DI fail because they are based on FAR and Defense Federal Acquisition Regulation Supplement ("DFARS") clauses which were not part of DI's subcontract, or to which DI was otherwise bound.  *See* Tr. at 23:10-23:20, 56:20-57:1; DI Mem. at 16-18; Sealed Exhibit A to DI Mem., Dkt. No. 44-1; DI Reply at 4-6.  Although Relator now argues otherwise, there can be no question that the Complaint against DI was built on these clauses.  *See* Compl. ¶¶ 49-50, 187, 372-73, 455.  Because the Complaint describes DI's purportedly fraudulent conduct only in terms of alleged failures to comply with these inapplicable clauses, the Complaint does not plead a valid FCA claim against DI.

Although Relator conceded at the Hearing for purposes of DI's Motion to Dismiss that the clauses upon which the Complaint is based were not incorporated into DI's subcontract, Tr. at 40:13-15, he offers three reasons for nevertheless maintaining the FCA claims against DI. First, Relator contends that the statements of work issued to DI and/or DI's own internal property management plan imposed contractual obligations upon DI.  Tr. at 40:23-41:2; *see* Opp. at 54-55.  However, as DI has demonstrated, DI Reply at 4-5, the Complaint alleges, at most, that the provisions in DI's statements of work imposed upon DI an ill-defined obligation to maintain "strict accountability" for Government property.  Relator's FCA claims, however, are plainly based upon alleged violations of detailed requirements of the missing FAR and DFARS provisions – not DI's alleged non-compliance with a generic requirement to maintain "strict accountability" for Government property.  DI's statements of work are an inadequate predicate for Relator's FCA claims against DI, because compliance with such a vague and high-level requirement cannot readily be classified as true or false, the prerequisite for FCA liability.  *See U.S. ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1378 (D.C. Cir. 2000). Similarly, Relator cannot rely upon internal DI policies and procedures because, by their nature, these are not contractual or regulatory requirements that would entitle the Government to refuse payment if they have been violated.  *See* Tr. at 57:2-9; DI Mem. at 29, 37; DI Reply at 4-5.  As such, the DI internal policies, like the generic requirement in the statements of work, cannot serve as a predicate for FCA liability.

The second justification Relator offers for maintaining the FCA claims against DI in the absence of the FAR/DFARS clauses is that DI can be liable under the FCA for causing co-defendant Northrop Grumman to submit false claims under its prime contract, Tr. at 41:3-6, a prime contract Relator never alleges was disclosed to subcontractor DI (and it was not).  Tr.

at 57:10-14.  But to proceed under this theory, Relator must still allege that DI submitted a false

claim to Northrop Grumman, thereby causing Northrop Grumman to submit a false claim to the

Government.  *See U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 35

(D.D.C. 2010).  Relator has not done so here, because he has failed to allege any non-compliance

with a material term of DI's subcontract that would render DI's payment requests impliedly

false, much less any express falsity, such as would be the case with an allegation that DI did not

actually incur the property and inventory management labor hours for which it billed.  As such,

to accept Relator's argument would extend FCA liability to subcontractors who violated no

contractual provision of their own, let alone committed no fraud, merely because a prime

contractor was subject to some other contractual requirement with which the prime contractor

did not comply.  This reading would, in effect, convert the FCA into a strict liability statute (with

treble damages) that extends to subcontractors wherever a contract violation has occurred, even

if by another party – a reading which is inconsistent with both the text and purpose of the FCA.

Third, Relator argued that, apart from any false claims that DI presented to the

Government, DI is liable for making false statements that are material to Northrop's false claims.

Tr. at 42:1-6.  This fallback theory fails like the others, because Relator has alleged no valid

"false or fraudulent claim" to which any alleged false statement could be material, 31 U.S.C.

§ 3729(a)(1)(B), and even if he had, he certainly has failed to allege facts showing that any such

false statement was material to the false claim in question – a necessary element without which

his false statements claim fails.

In the absence of the FAR and DFARS clauses on which the Relator built his FCA claim,

a count which must be judged on the four corners of the Complaint and not the fallback

arguments raised in the Opposition and at the Hearing, Count I should be dismissed.

### D.        Count I Otherwise Fails to State a Claim for an FCA Violation

There are a host of other pleading deficiencies with Relator's FCA allegations, and these defects pervade each FCA theory upon which Relator apparently tries to rely (or could conceivably try to rely).  On their own or in combination with Relator's failure to tie his allegations of fraud to any particular claim for payment or any particular FCA provision, these defects in the Complaint require the dismissal of Count I.

*First*, with regard to his presentment claim, Relator has failed adequately to allege falsity in connection with DI's payment requests, because, as DI pointed out at that the Hearing, Tr. at 24, performance issues of the type alleged by Relator are insufficient for establishing the "objective falsehood" required for FCA claims, leaving at most a potential contract action, which the Government may or (as in this case) may not assert.  DI Mem. at 24-25; DI Reply at 9-11. This critical difference was highlighted in the dismissal of a performance-based FCA claim against Kellogg Brown and Root ("KBR"), another government contractor, which, like DI, was never sued by the Government for breach of the contract provisions the relator cited:

> [Relators'] assertion rests not on an objective falsehood, as required by the FCA, but rather on Relators' subjective interpretation of KBR's contractual duties. Given the imprecise nature of the general maintenance provisions at issue here, it is not exactly clear what would qualify as adequate (or inadequate) maintenance under Task Order 43.  Moreover, although Relators posit that KBR did not properly perform under Task Order 43, the United States government—the actual party to the contract—has not expressed dissatisfaction with KBR's performance in the form of a breach of contract action.  Consequently, the question of whether KBR performed sufficient maintenance under the contract represents, at the very least, "a disputed legal question" about the "inefficient management of [one's] contractual duties."  This is precisely the sort of claim that courts have determined not to be a false statement under the FCA.

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376-77 (4th Cir. 2008) (citations omitted); *see also U.S. ex rel. Barko*, 2017 WL 1018309, at *5.

At the Hearing, Relator attempted to salvage his presentment claim by contending that DI effectively failed to perform its contractual duties at all – rather than that DI poorly performed those duties. *E.g.*, Tr. at 30:9-31:15, 36:13-16. However, Relator's argument is inconsistent with what is actually alleged in the Complaint. Relator does not allege that DI took no action to maintain push packs as stand-alone kits, Compl. ¶¶ 197-98, 203, or to prevent lost or wasted aircraft parts, *id.* at ¶ 211, or to stop fuel from being stolen, *id.* at ¶¶ 212-18, or to track property on the program, *id.* at ¶ 103. Rather, in each of these areas, and indeed throughout the Complaint, Relator acknowledges that DI performed these assigned tasks, and took several significant steps to identify and if necessary remedy potential property management issues, *see e.g.*, *id.* at ¶¶ 233, 239-40, 356-59, but that ultimately, in his opinion, DI did not satisfactorily perform its tasks during the one-year he spent on the seven-year CNTPO program.

The situation with the Management Information System ("MIS") – the system designed with a Cyrillic alphabet for Russian-made parts – is a good example of why Relator's criticism of DI's performance falls well short of the "objective falsehood" on which FCA performance-related claims must be based. Relator argued at the Hearing that DI effectively rendered no performance with regard to the MIS system because one module of it was never <u>implemented</u>. Tr. at 32:1-8. But DI was obligated to <u>develop and implement</u> MIS, and Relator does not allege that DI did nothing to develop the system, only that the MIS property management module was not yet fully developed and turned on when he was last involved. Compl. ¶ 166. Failing to complete the development of an MIS module on a timely basis, even if true (and it is not), is not <u>non</u>-performance; it is, at most, unsuccessful performance – a classic breach of contract issue, not an FCA claim.

*Second*, the Complaint fails to establish that any noncompliance by DI was material to the Government's payment decision.  Relator characterizes Defendants' argument in this regard as being limited to the issue of whether the Government's actual knowledge of performance issues defeats any materiality claim because the Government continued to pay even with this knowledge.  Tr. at 39:4-16.  While knowledge by the Government most certainly defeats the FCA claims, DI also argued that the Complaint fails to allege facts showing that the performance issues Relator alleges were sufficiently linked to a payment decision, a link which is required to establish materiality, regardless of whether Government knowledge might also defeat a finding of materiality.  *See* DI Reply at 12-13.  For example, with regard to DI's alleged mismanagement or loss of property – e.g*.,* fuel, aircraft parts, and push packs – these issues are far too attenuated from any payment decision to support an FCA claim.  Indeed, under the FAR clause upon which Relator relies (even assuming it applies to DI), DI would presumptively *not* be liable for property that is lost, stolen, damaged, or destroyed absent a determination of bad faith or gross misconduct.  FAR 52.245-1(h)(1)(ii).  Thus, there simply is no plausible basis to assert that the loss of such property renders false the DI requests for the payment of employee hours spent on property management functions.

*Third*, because Relator has failed to state a presentment claim, his false records/statements claim also fails because there is no false claim to which any false records/statements could be material.  31 U.S.C. § 3729(a)(1)(B).  Moreover, while Relator contends that Defendants provided a property book that was designed to cover up the prior submission of false claims, *see* Tr. at 37:20-38:7, the linkage between any allegedly false claims and the property book is still unclear, even after Relator's arguments at the Hearing, particularly because the Complaint acknowledges that the property book in question was never intended to be

11

the final accounting for property. *See id.* at 52:7-15; *see also* Compl. ¶¶ 355-56. Finally, as previously demonstrated, merely losing property during the course of performance does not render DI's payment requests false, and thus, Relator's allegations of property mismanagement do not give rise to a presentment claim to which any alleged false statement in the property book could be material.

*Fourth*, Relator's FCA conversion claim must be dismissed because Relator does not allege that the property in question was to be delivered *to the Government*, as opposed to being put to use by DI on the program. Relator failed to contest this point in his Opposition, *compare* DI Mem. at 32-33 *with* Opp. at 58, or at the Hearing; therefore, the conversion part of the five-part FCA claim in Count I should be dismissed.

*Fifth*, Relator's reverse-false-claim cause of action should be dismissed because Relator has not adequately pled that DI had an "obligation" to pay or transmit money or property to the Government – an essential element of a reverse false claim, 31 U.S.C. § 3729(a)(1)(G). Under FAR 52.245-1(h)(1) (again, assuming it applies), DI is presumptively *not* obligated to repay the Government for lost, stolen, damaged, or destroyed property, and in fact, is only required to do so if and when the Government determines that an exception to this general rule applies. As such, there is no established "obligation" to repay the Government or transmit property, and without this element, Relator cannot state a cause of action for a reverse-false-claim.

*Sixth*, the Complaint does not state an FCA conspiracy claim for two reasons: (1) Relator has not adequately alleged a substantive FCA violation, which must be established for a conspiracy claim to prevail; and (2) Relator has not adequately alleged an agreement to violate the FCA between Northrop Grumman and DI, particularly when the allegations of the Complaint

demonstrate the disagreements between, not the conspiratorial conduct of, DI and Northrop

Grumman.  S*ee* DI Mem. at 38-39; DI Reply at 16-17.

### III.   COUNT II SHOULD BE DISMISSED BECAUSE RELATOR HAS FAILED TO STATE A CLAIM FOR RETALIATION

As explained at the Hearing and as set forth in DI's moving papers, Relator's FCA

retaliation claim should be dismissed because, not only does the Complaint fail adequately to

allege this claim, but the Complaint provides an alternative explanation which defeats the

plausibility of the alleged adverse employment action.  Tr. at 26:5-11; DI. Mem. at 42-43; DI

Reply at 18.  Indeed, there is no genuine dispute that Relator's one-year employment contract

was not renewed when that contract expired, because his proper management responsibilities and

the work of many other DI employees was transferred by Northrop Grumman from DI to another

company.  *See* Compl. at ¶¶ 413, 429. Accordingly, the Complaint fails to show causation

between the non-renewal of Relator's employment contract and any protected activity, as is

required to state a claim for retaliation.  Though Relator now argues that he "was told that his

employment would then not be continued because he had rocked the boat too much with his

allegations about property-management misconduct," Tr. at 45:14-17, the Complaint only makes

this allegation with regard to Northrop Grumman, s*ee* Compl. ¶¶ 400-401, and thus the allegation

fails to show any retaliatory intent by DI.

Relator also contends essentially that he "should have been" hired for another position

and that DI should have paid his return airfare from Afghanistan to the United States, but these

allegations are also unsupported by plausible allegations of causation.  In addition, with regard to

Relator's airfare for a rest and relaxation ("R&R") trip home, which was the reason for his final

trip back from Afghanistan in August 2013, Relator's one-year employment contract did not

obligate DI to pay or reimburse the fare; Relator was to use for the fare the R&R travel stipend he was owed (and paid).  *See* Sealed Exhibit C to DI Mem., Dkt. No. 44-1, at 3.

## IV.    COUNT IV SHOULD BE DISMISSED BECAUSE RELATOR HAS FAILED TO ALLEGE A WRONGFUL DISCHARGE UNDER VIRGINIA LAW

As discussed at the Hearing and in DI's Memorandum and Reply in support of the motion to dismiss, Count IV, which alleges that Relator was wrongfully discharged under Virginia law, must be dismissed because Relator was an at-will employee and the public policy exceptions to the at-will doctrine do not apply to Relator.  *See, e.g.*, Tr. 26:12-23; DI Mem. at 43-44; DI Reply at 20-22.

At the Hearing, Relator argued that these public policy exceptions do apply to Relator because he was discharged for refusing to commit a larceny that could be prosecuted in Virginia. Tr. at 46:13-23.  To try to establish the jurisdiction of Virginia, he argued that "many of the larcenist acts" were approved in Virginia or were otherwise furthered by documents prepared in Virginia.  *Id*.  This argument breaks down when one reviews what Relator actually alleges in the Complaint.  Relator contends that "false representations and promises made to the United States . . . were reviewed and agreed to at Northrop and DynCorp's Virginia locations."  Compl. ¶ 479.  But the supposed "false representations and promises" Relator points to are contract and task order documents issued by the Government to Northrop – which are not alleged to have been false or fraudulent anywhere else in the Complaint.  Indeed, Relator actually alleges that, after these documents were executed, Defendants failed to comply with their terms – which does not support a finding that the mere execution of these documents somehow furthered larcenist acts in Virginia.

Relator also points to "Performance Management Reviews" that the Government allegedly held in Virginia and which DI personnel allegedly attended.  Compl. ¶ 479.  Though

Relator contends that DI made false representations at these meetings, this allegation, too, is found nowhere else in the Complaint and is entirely unsupported by any detail, such as who made the alleged false representations, to whom the representations were made, and the effect of such representations.  Finally, Relator alleges that a DI compliance investigator who investigated Relator's retaliation claim worked out of DI's Virginia office.  *Id.*  This allegation plainly has nothing to do with an alleged commission of larceny in Virginia by DI.  Therefore, just as in *Twigg v. Triple Canopy, Inc.*, 2010 WL 2245511, at *3 (E.D. Va. June 2, 2010), Virginia would have no jurisdiction over the alleged larceny Relator tries to create, and so the discharge alleged by Relator does not fall within the public policy exceptions to Virginia's at-will employment doctrine.

## V.   CONCLUSION

For the foregoing reasons, and those set forth in DI's original Memorandum, and its reply in support of its motion to dismiss, Relator's Complaint should be dismissed in its entirety.

Dated:  September 11, 2017

Respectfully submitted,

/s/ David M. Nadler
David M. Nadler (Bar No. 402705)
Steven J. Roman (Bar No. 392959)
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201
DNadler@BlankRome.com

*Counsel for DynCorp International Inc., DynCorp International LLC, and Delta Tucker Holdings, Inc.*