## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. FRED MAXEY CLONINGER<br><br>Plaintiffs,<br><br>v.<br><br>DYNCORP INTERNATIONAL INC.; DYNCORP INTERNATIONAL LLC; DELTA TUCKER HOLDINGS, INC.; AND NORTHROP GRUMMAN CORPORATION<br><br>Defendants. | Civil Action No. 14-CV-00581 (RJL) |

### ANSWER AND DEFENSES OF DYNCORP INTERNATIONAL LLC, DYNCORP INTERNATIONAL INC., AND DELTA TUCKER HOLDINGS, INC. TO RELATOR'S FIRST AMENDED COMPLAINT

Defendant DynCorp International LLC ("DI") hereby responds to Relator Fred Maxey Cloninger's ("Relator") First Amended Complaint ("Complaint"), Dkt. No. 11.

Defendants DynCorp International Inc. and Delta Tucker Holdings, Inc. join in the responses of DI, but in doing so preserve their position that they are not proper parties in this case. These two Defendants aver that they were not parties to the DI subcontract ("Subcontract") with Northrop Grumman Technical Services, Inc., which is believed to be a wholly-owned subsidiary of Northrop Grumman Corporation (and which is referred to collectively with Northrop Grumman Corporation as "Northrop Grumman") under the Counter Narcoterrorism Technology Program Office ("CNTPO").  Moreover, DynCorp International Inc. and Delta Tucker Holdings, Inc. aver that only DI performed under the Subcontract and that only DI employed Relator for the approximately one-year he worked on the seven-year CNTPO program.  Finally, these two Defendants aver that Relator has made no allegations that would allow the

Court to "pierce the corporate veil" and hold DynCorp International Inc. or Delta Tucker

Holdings, Inc. responsible for any alleged legal violation or any alleged damages set forth in the

Complaint against DI.  Relator has acknowledged these limitations and has agreed that the

Complaint against DynCorp International Inc. and Delta Tucker Holdings, Inc. should be

dismissed.[1]

To the extent that the headings in the Complaint require a response, DI denies the

allegations therein.  With respect to the numbered paragraphs of the Complaint, DI responds

as follows:

## I.    INTRODUCTION

1.    DI admits that this case purports to be an action pursuant to the False Claims Act

(the "FCA"), 31 U.S.C. ¶ 3729 *et seq*., and that Relator seeks damages and civil penalties under

the FCA.  DI further admits that this case purports to be an action by Relator pursuant to the

retaliation provision of the FCA, 31 U.S.C. ¶ 3730(h), and that Relator seeks damages under

state tort law.  All allegations not admitted are denied.

2.    DI admits that Northrop Grumman entered into the Counter Narcoterrorism

Global Support prime contract ("CNGS Contract") with the United States Government

("Government") which provided for, *inter alia*, the provision of certain logistical and operational

support in Afghanistan.  In response to the second sentence of Paragraph 2, DI admits that

Northrop Grumman subcontracted with DI to provide for certain CNTPO services; however, DI

is without knowledge or information sufficient to form a belief about the percentage of services

---

[1] In their opening and reply memoranda in support of their motion to dismiss, and at the
August 2, 2017 hearing on the motion, the three DynCorp-related Defendants requested the
dismissal of DynCorp International Inc. and Delta Tucker Holdings, Inc., Dkt. No. 43-1, at 44-
45; Dkt. No. 54 at 3, and Relator did not oppose dismissing the Complaint against those
Defendants, Dkt. No. 51, at 74 n.40.

it provided that were required of the Northrop Grumman under the CNGS Contract, and DI denies the other allegations in the second sentence on that basis.  All allegations not admitted are denied.

3.      DI admits that it agreed to provide multiple services pursuant to its Subcontract with Northrop Grumman, including certain types of procurement, supply chain management, and inventory management.  DI lacks knowledge or information sufficient to form a belief about the truth of the allegations related to what was required of Northrop Grumman under the CNGS Contract, and DI denies those allegations on that basis.  All allegations not admitted are denied.

4.      DI admits that management of the Government's property was an important part of the CNTPO program.  DI lacks knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 4, and DI denies the allegations on that basis.

5.      DI denies the allegations in Paragraph 5.

6.      DI denies the allegations in Paragraph 6.

7.      DI denies the allegations in Paragraph 7.

8.      DI denies the allegations in Paragraph 8.

9.      DI denies the allegations in Paragraph 9.

10.      DI denies the allegations in Paragraph 10.

11.      DI admits that the FCA was originally enacted during the Civil War to address certain issues of potential fraud against the Government, and the FCA was amended in 1986, 2009, and 2010.  DI denies Relator's characterizations of the Congressional intent in enacting and amending the FCA.  All allegations not admitted are denied.

12.     DI admits that Relator paraphrases the current language of 31 U.S.C. §
3729(a)(l)(A) and 31 U.S.C. § 3729(a)(l)(B).  DI denies that the Complaint states any valid
claims under the FCA.  All allegations not admitted are denied.

13.     DI admits that Relator paraphrases the current language of 31 U.S.C. §
3729(a)(1)(D) and 31 U.S.C. § 3729(a)(1)(G). DI denies that the Complaint states any valid
claims under the FCA.  All allegations not admitted are denied.

14.     DI admits that Relator paraphrases the current language of 31 U.S.C.
§ 3729(a)(1).  DI denies that the Complaint states any valid claims under the FCA.  All
allegations not admitted are denied.

15.     DI admits that a person may bring a civil action on behalf of the United States
Government under the FCA and may share in a potential recovery by the Government.  DI
denies that "any person having information" may bring an FCA action and avers that only a
person who is an original source of the information may bring an FCA action.  DI admits the
allegations in the second sentence of Paragraph 15.  DI denies that the Complaint states any valid
claims under the FCA.  All allegations not admitted are denied.

16.     DI admits that Relator paraphrases and partially quotes the current language of
31 U.S.C. § 3730(h)(1).  DI denies that the Complaint states any valid claims under the FCA.
All allegations not admitted are denied.

17.     DI admits that Virginia law provides certain exceptions to the at-will employment
doctrine, including an exception related to the violation of Virginia law, and DI admits that
Virginia law recognizes under certain circumstances claims against third parties for tortious
interference with an employee's contractual relationship with his employer.  DI denies all other
allegations in Paragraph 17.

4

18.     DI admits that Relator seeks damages, civil penalties and other relief based on the allegations in the Complaint.  DI denies that Relator is entitled to any relief against DI or its affiliated entities.  All allegations not admitted are denied.

## II.    PARTIES

### A.    Plaintiffs

19.     DI admits that the United States is the real party in interest in an FCA *qui tam* action.  By way of further response, DI avers that, after an extensive investigation, the Government declined to join this action.  DI also admits that the Government entered into Contract No. W9113M-07-D-0007 ("CNGS Contract") with Northrop Grumman and issued task orders to Northrop Grumman pursuant to the Contract.  All allegations not admitted are denied.

20.     DI admits that Fred Maxey Cloninger is the Relator in this action; that he was hired in or about October 2012 by DI as a logistics manager to support components of the Department of Defense CNTPO program operating in Afghanistan, including property management; that he was based primarily in Afghanistan; and that he reported to DI personnel in Huntsville, Alabama and Fort Worth, Texas.  All allegations not admitted are denied.

21.     DI admits that Relator's one-year offer of employment provided that his annual salary would be $110,000 and that he would be paid hazardous duty pay at 35% of his base rate of pay and a post differential at 35% of his base rate of pay, bringing his total annual salary to $187,000.  DI further admits that Relator's employment agreement provides for a contract completion bonus of 10% of base rate of pay, that Relator was entitled to receive 30 calendar days of rest and relaxation ("R&R") after working 90 consecutive calendar days in Afghanistan, and that Relator was eligible to participate in the DI benefits program.  DI denies the remaining allegations in Paragraph 21.

5

22.     DI denies the allegations in Paragraph 22.  By way of further response, DI avers that Relator held the position of logistics manager until the expiration of his Foreign Services Employment Agreement ("FSA") on September 30, 2013.

23.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23, and therefore denies the allegations.

24.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24, and therefore denies the allegations.

**B.     Defendants**

25.     DI admits that Northrop Grumman Corporation is a Delaware corporation and was prime contractor to the Government, through a wholly-owned subsidiary, on the CNTPO program.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25, and therefore denies the allegations.  All allegations not admitted are denied.

26.     DI admits that Delta Tucker Holdings, Inc. is a Delaware corporation, but denies that it is headquartered in Falls Church, Virginia, and has major administrative offices in Fort Worth, Texas.  DI avers that Delta Tucker Holdings, Inc. has offices in McLean, Virginia.  DI admits the allegation in the second sentence of Paragraph 26.

27.     DI admits that DynCorp International Inc. is a Delaware corporation with headquarters in McLean, Virginia.  All other allegations in Paragraph 27 are denied.

28.     DI admits the allegations in the first sentence of Paragraph 28, except that it denies that it is a corporation.  DI avers that it is a limited liability company formed in Delaware.  DI admits that it was the entity that entered into a one-year FSA with Relator.  All other allegations in Paragraph 28 are denied.

29.     DI admits that Relator's Complaint refers to Delta Tucker Holdings, Inc., DynCorp International Inc., and DI collectively as "DynCorp."  DI denies that all or any the entities has a business segment called the "Aviation Group."  All remaining allegations are denied.

## III.    JURISDICTION AND VENUE

30.     DI admits the allegations in Paragraph 30.

31.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31, and therefore denies the allegations.

32.     DI admits that 31 U.S.C. § 3732(a) authorizes nationwide service of process, that DI has minimum contacts with the United States, and that DI has transacted business in this judicial district.  All remaining allegations in Paragraph 32 are denied.

## IV.    CNTPO BACKGROUND

### A.     The Counter Narcoterrorism and Technology Program Office

33.     With regard to the first sentence of Paragraph 33, DI admits that the CNTPO was established within the Department of Defense in or about 1996, but DI lacks knowledge or information sufficient to form a belief about the role or timing of Congress in establishing CNTPO and therefore denies the allegations.  DI admits the allegations in the second and third sentences of Paragraph 33.

34.     In response to the first sentence of Paragraph 34, DI lacks knowledge and information sufficient to form a belief about the truth of the allegations, and therefore denies the allegations.  DI admits the allegations in the second, third, and fourth sentences of Paragraph 34.

35.     DI admits the allegations in Paragraph 35, except DI avers that the fifth "other office" is located at Shindand, not Shindad.

7

36.     DI admits that CNTPO utilizes personnel that that are employees of private contractors, Afghan military and police, and United States military personnel, including members of the Air Force.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 36, and therefore denies the allegations.  All allegations not admitted are denied.

### B.     The Counter Narcoterrorism Global Support Contract

37.     DI admits the allegations in Paragraph 37.

38.     In response to the first sentence in Paragraph 38, DI admits that Contract No. W9113M-07-D-007(previously defined in these responses as the "CNGS Contract") was awarded on or about August 24, 2007.  DI avers that the CNGS Contract was awarded to Northrop Grumman Space and Mission Systems Corporation, which is believed to be a wholly-owned subsidiary of Northrop Grumman (and is referred to collectively herein with Northrop Grumman Corporation and Northrop Grumman Technical Services, Inc. as "Northrop Grumman")  DI admits the allegations in the second, third and fourth sentences of Paragraph 38.

39.     DI admits the allegations in Paragraph 39.

40.     As to the first sentence in Paragraph 40, DI admits that Northrop Grumman was a prime contractor under the CNGS Contract and that Northrop Grumman agreed to provide multiple services in furtherance of the Government's counter narcoterrorism efforts in Afghanistan.  DI lacks knowledge or information about the terms of the CNGS Contract sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 40, and DI therefore denies the allegations.  All allegations not admitted are denied.

41.     DI admits the allegations in the first sentence of Paragraph 41.  With respect to the second sentence, DI denies that it entered into a Subcontract with Northrop Grumman Corporation, and avers that it entered into a subcontract with Northrop Grumman Technical

Services, Inc.  DI is without knowledge or information sufficient to form a belief about the percentage of services it provided that were required of the prime contractor under the CNGS Contract, and DI denies these allegations on that basis.  DI admits the allegations of the third sentence of Paragraph 41.  All allegations in Paragraph 41 not admitted are denied.

42.     DI admits that its provided operations and support-related services, including those listed in the second and third sentences of Paragraph 42.  However, DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the percentage of services it provided that were required of the prime contractor under the CNGS Contract, and DI denies these allegations on that basis  All allegations not admitted are denied.

43.     DI admits that the Government issued Task Orders under the Prime Contract to the prime contractor, but DI lacks knowledge and information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 43 and denies the allegations on that basis.

44.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 44 regarding the terms of the payment options under the CNGS Contract, and therefore denies the allegations.

45.     DI admits that Northrop Grumman paid DI for certain work performed pursuant to the Subcontract.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the CNGS Contract in Paragraph 45, and therefore denies the allegations.  All allegations in Paragraph 45 not admitted are denied.

## V.     CNGS CONTRACT LANGUAGE AND LEGAL FRAMEWORK

46.     With regard to the first sentence of Paragraph 46, DI admits that the FAR, codified in Chapter 48 of the Code of Federal Regulations, governs Government contracts for goods and services, and that certain provisions of the FAR applied to the CNGS Contract, the

Subcontract, and related Task Orders.  With regard to the second sentence of Paragraph 46, DI admits that the FAR sets forth requirements binding the executive agencies of the United States and all contractors that provide good and services to those agencies.  However, DI denies that all of the provisions and clauses of the FAR apply to all contractors that provide goods and services to executive agencies of the United States.  All allegations in Paragraph 46 not admitted are denied.

47.     DI admits that the Defense Federal Acquisition Regulation Supplement ("DFARS") is promulgated by the Department of Defense and applies to defense contracts. However, DI denies that all of the provisions and clauses of the DFARS apply to all contractors that provide goods or services under contracts issued by the Department of Defense.  DI denies that the citation to 41 U.S.C. § 421(c)(2) supports Relator's allegations.  All allegations in Paragraph 47 not admitted are denied.

48.     DI admits that the International Traffic in Arms Regulations ("ITAR") restricts access to certain defense-related information, articles, and technologies, and that ITAR applied to certain items utilized on the CNTPO program.  All allegations in Paragraph 48 not admitted are denied.

49.     DI admits that certain FAR, DFARS and ITAR provisions pertain to property management under Government contracts, but DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 49 because Relator has not specified the FAR, DFARS, and ITAR provisions on which he purports to rely, and DI denies the allegations in Paragraph 49 on that basis.

50.     DI admits that the version of FAR 52.245-1 issued in 2007 contains the language alleged in Paragraph 50, but denies that FAR 52.245-1 currently contains these requirements.

10

Further, DI avers that FAR 52.245-1 was not incorporated into DI's Subcontract and, therefore, did not apply to DI's Subcontract.

51.     DI admits the allegations in Paragraph 51.  By way of further response, DI avers that DFARS 252.242-7004 was not incorporated into DI's Subcontract and, therefore, did not apply to DI's Subcontract.  DI further avers that DFARS 252.242-7004 did not go into effect until after DI entered into the Subcontract and that, therefore, DFARS 252.242-7004 did not apply to DI's Subcontract.

52.     In response to the first sentence of Paragraph 52, DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations because Relator does not specify the FAR and DFARS provisions on which he purports to rely, and DI therefore denies the allegations.  With regard to the second and third sentences of Paragraph 52, DI admits that FAR 52.245-1 generally requires government contractors to investigate and report to the Government all incidents of property loss.  All allegations not admitted are denied.  By way of further response, DI avers that FAR 52.245-1 was not incorporated into DI's Subcontract and, therefore, did not apply to DI's Subcontract.

53.     DI admits that the version of FAR 52.245-1 issued in 2007 contained the quoted language, but denies that the current version of FAR 52.245-1 contains the quoted language.  Further, By way of further response, DI avers that FAR 52.245-1 was not incorporated into DI's Subcontract and, therefore, did not apply to DI's Subcontract.

54.     DI admits the allegations in Paragraph 54 with regard to the version of FAR 52.245-1(f)(vi) issued in 2007, and admits that the current version of a different subsection, FAR 52.245-1(f)(vii), now sets forth substantially similar requirements.  DI denies the allegations in Paragraph 54 with regard to the current version of FAR 52.245-1(f)(vi).  By way of

further response, DI avers that FAR 52.245-1 was not incorporated into DI's Subcontract and, therefore, did not apply to DI's Subcontract.

55.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 55 regarding the purposes for which the Government uses LTDD reports, and therefore denies the allegations.

56.     DI admits that the version of FAR 52.245-1 issued in 2007 provided as alleged in Paragraph 56, but denies that the current version of FAR 52.245-1 so provides.  Further, DI avers that FAR 52.245-l(f)(vii) was not incorporated into DI's Subcontract and, therefore, did not apply to DI's Subcontract.

57.     DI denies the allegations in Paragraph 57.  DI avers that, pursuant to FAR 52.245-1(h)(1), contractors may not be held liable for the loss of Government property unless certain criteria are met, one of which is that the "[l]oss of Government property . . . is the result of willful misconduct or lack of good faith on the part of the Contractor's managerial personnel." Further, DI avers that FAR 52.245-l(h)l(ii) was not incorporated into DI's Subcontract and, therefore, did not apply to DI's Subcontract.

58.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in the first sentence of Paragraph 58.  In response to the second sentence of Paragraph 58, DI admits that Northrop Grumman provided Statements of Work ("SOWs") to DI. All characterizations of those documents are specifically denied.  All other allegations in Paragraph 58 are denied.

59.     DI admits that the Statement of Work ("SOW") issued by Northrop Grumman to DI dated July 2, 2012 contains the quoted language.  All characterizations of that document are specifically denied.  All other allegations in Paragraph 59 are denied.

12

60.     DI admits that the SOW issued by Northrop Grumman to DI dated July 2, 2012 contains the quoted language.  All characterizations of that document are specifically denied.  All other allegations in Paragraph 60 are denied.

61.     DI admits that it developed procedures known as the Property Management Plan ("PMP") and that one version of that document was given document number 3.5.17.1.  DI also admits that the PMP that was given document number 3.5.17.1 contains the quoted language. All characterizations of that document are specifically denied.  All other allegations in Paragraph 61 are denied.

62.     DI denies the allegations in Paragraph 62.

63.     DI denies the allegations in Paragraph 63.

## VI.     THE ROLE OF LOGISTICS AND PROPERTY MANAGEMENT UNDER THE CNGS CONTRACT

### A.     The Logistics Function

64.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 64 regarding the CNGS Contract, and therefore denies the allegations.

65.     DI admits that, in general, logistics may involve, *inter alia*, management of property, which can include procurement, supply chain management and inventory management. DI denies the remaining allegations in Paragraph 65.

66.     DI admits that, in general, procurement may involve the purchasing of items and that, under its Subcontract with Northrop Grumman, DI handled certain procurement duties.  DI denies the remaining allegations in Paragraph 66.

67.     DI admits that, in general, supply chain management may involve the receipt, movement, and tracking of items.  DI also admits that certain items procured by DI were shipped

from a vendor to the DI Quality Consolidation Center ("QCC") in Coppell, Texas, where the items were compared to procurement information.  DI denies the remaining allegations in Paragraph 67.

68.     DI admits that certain items were shipped from the DI QCC in Texas, via private shippers (one of whom was Damco) to a facility in Dubai, UAE, where certain types of shipments were consolidated for further shipment into Afghanistan.  DI admits that certain property was shipped directly to the Dubai facility, from where it was subsequently shipped, at times by truck, to Afghanistan.  DI admits that certain property was shipped initially to Kabul, for subsequent shipment to other locations in Afghanistan.  DI denies the remaining allegations in Paragraph 68.

69.     DI admits that, in general, inventory management can mean the management of certain property in the possession of a contractor and that such management can include activity at the time an item is received at the site where it will be used.  DI denies the remaining allegations in Paragraph 69.

70.     DI admits the allegations in Paragraph 70.

71.     DI admits that a contractor cannot be accountable for an item of GFE until it is properly delivered to the contractor and that types of items listed in Paragraph 71 can be GFE items.  The remaining allegations in Paragraph 71 are denied.

72.     DI admits that, Contractor Acquired Property ("CAP") is property that a contractor acquires for use on a Government contract and that the types of property listed in Paragraph 72 can be CAP.  The remaining allegations in Paragraph 72 are denied.

73.     DI admits that receiving can refer to the process of initially accepting property into a contractor's custody and that supply technicians and property book officers can have the

authority to receive property. DI further admits that the process of receiving summarized in Paragraph 73 can be a proper way of receiving property, but DI denies that that is the only proper way of doing so. All allegations not admitted are denied.

74. DI admits that after an asset is received, the contractor can be responsible for tracking the CAP and GFE, that the system of tracking can depend on the type of property, and that material and equipment are two types of property. All allegations not admitted are denied.

75. DI admits that material can refer to items that may be consumed or expended during the performance of a contract or that will be incorporated into another item. DI admits that the types of property listed in Paragraph 75 can be material and that material can be assigned to a location or issued to an end user. All allegations not admitted are denied.

76. DI admits that durable items of property that are non-expendable and needed for the performance of a contract can be referred to as equipment. DI further admits that a piece of equipment, after it is received can be placed in a storage or warehouse facility or issued to an individual with a hand receipt. All allegations not admitted are denied.

77. DI admits that when a hand receipt is issued for an item of property, it includes relevant information about the item of property and the signature of the individual to whom it is issued. DI admits that if the item is returned by the individual, he or she receives the hand receipt. All allegations not admitted are denied.

78. DI admits that, when a hand receipt is issued for an item of property, personnel can determine the custodian of the item by referencing the hand receipt. All allegations not admitted are denied.

**B. DynMRO and MIS**

79. DI admits that FAR 52.245-1(f) states, "The Contractor shall create and maintain records of all Government property accountable to the contract, including Government-furnished

and Contractor-acquired property."  DI further admits that FAR 52.245-1(f)(ii)(A)(1) provides: "Property records shall enable a complete, current, auditable record of all transactions…."  However, DI denies that FAR 52.245-1 was incorporated into the Subcontract.  DI lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 79, because Relator does not identify the FAR and DFARS clauses on which his allegations are based; and DI therefore denies the allegations on that basis.  All allegations not admitted are denied.

80.     DI admits that its proprietary property management system is known as DynMRO.  DI also admits that companies with an approved property management system can have advantages over those that do not.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 80, and therefore DI denies the allegations.

81.     DI admits that DynMRO was DI's system of record used on the CNTPO program for property management.  DI admits that DynMRO could be updated at various points in the shipment or transfer of an item, including the types of shipments or transfers identified in Paragraph 81.  DI further admits that information in DynMRO about an item of property can be viewed by anyone with appropriate access to the system.  All allegations in Paragraph 81 not admitted are denied.

82.     DI admits that it considers DynMRO to be proprietary with direct access in the normal course of business limited to DI personnel.  DI admits that military personnel from and other contracting companies worked on the CNTPO program.  DI was not a prime contractor on the CNTPO program, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 82; DI denies those allegations on that basis.

16

83.     DI admits that DynMRO is proprietary and that it was not designed to be used with certain languages used in Afghanistan or elsewhere.  DI further admits certain of the Performance Work Statements under the Subcontract include Clause 4.2.1 MIS Requirement, which states: "Subcontractor shall establish a commercial computer based MIS.  This system shall be transferred to the USG for continued use by the MoD AAF and/or MOI-AIU upon the conclusion of this effort . . . The Subcontractor shall incorporate previously developed historical data into the MIS. . . ."  In further response, DI avers that it complied with its MIS obligations under the Performance Work Statements, including compliance after the conclusion of Relator's position at DI.  All allegations not admitted are denied.

84.     DI denies the allegations in Paragraph 84.

## ALLEGATIONS

**VII.   DEFENDANTS' FRAUDULENT CONDUCT AND RECKLESS DISREGARD FOR CONTRACTUAL AND LEGAL OBLIGATIONS ON THE CNTPO PROGRAM VIOLATED THE FCA AND CAUSED MILLIONS OF DOLLARS OF DAMAGE TO THE UNITED STATES**

**A.      Shortly After He Began Working for DynCorp, Relator Learned of Massive Problems With Defendants' Management of Property on the CNTPO Program**

85.     In response to the first sentence in Paragraph 85, DI admits that Relator started working for DI as a logistics manager on the CNTPO program in Afghanistan on or about September 28, 2012, but DI denies that Relator was the highest-ranking DI employee working on logistics for the CNTPO program.  In response to the second sentence in Paragraph 85, DI admits that Relator had responsibilities related to logistics for all of the CNTPO bases in Afghanistan, but DI denies that Relator was solely responsible for logistics for all of the CNTPO locations in Afghanistan.  In response to the third sentence of Paragraph 85, DI admits that during the approximately one-year Relator was employed by DI, a number of DI employees reported to him

for at least part of their work, but DI denies that approximately 25 employees at any one time were designated to report solely to him.  All allegations not admitted are denied.

86.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the specific organization chart he alleges was provided to him, because he provides insufficient to identify the document, and DI denies those allegations on that basis.  All other allegations in Paragraph 86 are denied.

87.     DI admits that Relator received training from Rebecca McClendon in Texas after he was hired at DI, that Ms. McClendon was a senior logistics manager who had responsibilities in connection with the CNTPO program and other programs, that Ms. McClendon had supervisorial responsibilities in the United States for certain parts of Relator's work, and that Relator was supervised in Afghanistan by Mark Fisher, DI's Site Manager.  All other allegations in Paragraph 87 are denied.

88.     DI admits that Ms. McClendon provided training to Relator in Texas regarding DI operations in connection with the CNTPO program, and that she provided training with respect to DynMRO and the data contained in DynMRO.  All other allegations in Paragraph 88 are denied.

89.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 90, including about a conversation that occurred in 2012 and Relator's beliefs about that conversation, and therefore denies the allegations in Paragraph 90; except that DI denies that property management in Kabul was chaotic or nonexistent or that there had never been property management on the CNTPO program.

90.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 90, and DI therefore denies the allegations in Paragraph 90.  DI

incorporates its responses to Paragraphs 150-67 as though set forth fully herein.  All allegations not admitted are denied.

91.     DI denies that DI employees in the United States did not have access to MIS.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the other allegations in Paragraph 91, and therefore denies the allegations.

92.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 92, and therefore denies the allegations.

93.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 93, as Relator has not specified the provision(s) of FAR and DFARS upon which he purports to rely, and DI therefore denies the allegations.

94.     DI admits that night vision goggles ("NVGs") are subject to ITAR.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 94, because Relator has not identified the specific property to which he purportedly refers, and DI denies the allegations.  All allegations not admitted are denied.

95.     DI lacks knowledge or information sufficient to form a belief regarding the truth of any of the allegations in Paragraph 95 regarding a discussion that purportedly took place in 2012 or Relator's beliefs about that discussion, and therefore denies the allegations.

96.     DI denies the allegations in Paragraph 96.

**B.      Shortly After His Arrival in Afghanistan, Relator Discovered That DynCorp Had Lost Track of Millions of Dollars of Government Property**

      **1.      Relator Discovered That DynCorp Blatantly Disregarded Standard Procedures, Required by Law and Contract, for Handling the Receipt and Tracking of Government Property**

97.     DI admits that Relator arrived in Afghanistan on or about October 24, 2012.  All other allegations in Paragraph 97 are denied.

98.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 98 regarding specific conversations Relator alleges to have had with unidentified DI personnel in 2012, or conduct by Northrop Grumman related to such conversations, and therefore denies the allegations.

99.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 99 regarding specific conversations Relator alleges to have had with unidentified DI personnel in 2012, and DI therefore denies the allegations.  All other allegations in Paragraph 99 are denied.

100.     DI admits that an "in transit" designation in DynMRO indicated that an item was en route from the QCC in Texas to Kabul or between CNTPO sites.  DI lacks knowledge of information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 100 regarding Relator's conduct in 2012, and DI therefore denies the allegations.  All allegations not admitted are denied.

101.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 101 regarding Relator's conduct in 2012, and therefore denies the allegations.

102.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 102 regarding Relator's conduct in 2012, and therefore denies the allegations.

103.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in the first, second, third, and fifth sentences of Paragraph 103 regarding the information Relator purports to have learned in 2012, and therefore denies the allegations.  In response to the fourth sentence of Paragraph 103, DI lacks knowledge or information sufficient

to form a belief regarding the truth of the allegations as Relator has not specified the FAR provisions on which he purports to rely, and DI therefore denies the allegations.

104.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 104 regarding what Relator purports to have learned or realized, or the efforts he took to locate an item in 2012, and therefore denies the allegations.  All other allegations in Paragraph 104 are denied.

105.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 105, including allegations regarding what Relator purports to have discovered in 2012, and therefore denies the allegations.

106.    DI admits that hand receipts could be used to track property when a person went on R&R.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 106, including those related to hand receipts for unidentified property and unidentified ITAR items, and DI therefore denies the allegations.

107.    DI admits that Amber Snodgrass was an Aviation Life Support Technician on the CNTPO program.  DI further admits that aviation life support equipment includes equipment of certain of the types identified in Paragraph 107.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 107, and DI therefore denies the allegations.

108.    DI denies the allegations in Paragraph 108.

109.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 109 regarding Relator's conduct in November 2013, and therefore denies the allegations.

110.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 110, and therefore denies the allegations.

### 2. Northrop and DynCorp Were Not Willing to Devote Sufficient Resources to Meet Their Property Management Responsibilities Under the Contract and FAR

111.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 111 regarding Relator's discussions with unidentified DI employees in 2012, and therefore denies the allegations.

112.     DI admits that Allen Wood was a deputy project manager for a period on CNTPO and later became a program manager.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in the second sentence of Paragraph 112, including allegations regarding the language used in a 2012 conversation Relator purportedly had with Mr. Wood in 2012, and therefore denies the allegations.  All allegations not admitted are denied.

113.     DI admits that Jimmy McBride was a logistics manager on CNTPO and later became a deputy project manager for CNTPO and that the CNTPO PMO was located in Fort Worth for a certain period.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 113, and therefore denies the allegations.

114.     DI admits that Michael Schreiner was a logistics supervisor and that Mr. Schreiner reported to Ms. McClendon for certain portions of his responsibilities.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 114 regarding Mr. Schreiner's purported conversations with Relator in 2012, and therefore denies the allegations.  All allegations not admitted are denied.

22

115.    DI lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 115 regarding what Relator purports to have observed in 2012, and therefore denies the allegations.

116.    DI lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 116 regarding the 2012 organization chart to which Relator purports to refer, without providing the date or other identifying information for the document, and DI therefore denies the allegations.

117.    DI denies the allegations in the first sentence of Paragraph 117.  By way of further response, DI avers that Luis Duque served as the Property Book Officer in Kabul but not as the Supply Officer.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 117 as Relator has not specified what property management procedures or provisions of FAR or DFARS on which he purports to rely, and therefore denies the allegations.

118.    In response to the first sentence of Paragraph 118, DI admits that Mr. Duque served as the Property Book Officer for each CNTPO base in Afghanistan.  DI denies that Mr. Duque served as the Supply Officer for any CNTPO bases in Afghanistan.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 118, and therefore denies the allegations.  All allegations not admitted are denied.

119.    DI admits that Carlos Morales was a warehouse manager.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 119, and therefore denies the allegations.  All allegations not admitted are denied.

23

120.     In response to the first sentence of Paragraph 120, DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations, and therefore denies the allegations.  DI denies the remaining allegations in Paragraph 120.

121.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 121 and therefore denies the allegations.  By way of further response, DI denies that its management of the Government's property in the CNTPO program was in a "state of disarray" or that it engaged in any "egregious practices" that "defrauded and causes financial loss to the Government."

**C.     DynCorp Devised a Fraudulent Scheme to Bill the Government for Property That DynCorp Falsely Claimed Had Been Delivered to Afghanistan When the Property Was Still Sitting in a Warehouse in Texas, Which Ultimately Led to the Loss and Wastage of Millions of Dollars of Government Property**

122.     In response to the first sentence of Paragraph 122, DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the prime contractor's obligations under the CNGS contract, and DI therefore denies the allegations.  All other allegations in Paragraph 122 are denied.

123.     DI denies that it engaged in the referenced scheme.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the other allegations in Paragraph 123, and therefore denies the allegations.

124.     DI admits that industry standards provide testing procedures for avionics instruments, that such instruments include those with gauges in the cockpit, and that the CNGS Contract and related task orders provided for the use of test labs at bases in Afghanistan.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 124, and therefore denies the allegations, except that DI denies that an avionics test lab is intended to be housed in a forty-foot container.

24

125.    DI admits only that that some avionics testing was outsourced.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 125, and therefore denies the allegations.

126.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 126, including allegations regarding the information Relator purportedly learned at some unspecified time from an email whose date is not provided, or from purported discussions with unidentified DI and Northrop Grumman, and DI therefore denies the allegations.

127.    DI denies that DI engaged in a fraudulent billing scheme.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 127, and therefore denies the allegations.

128.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 128 regarding what Relator purportedly discovered in May or June 2013, and therefore denies the allegations.

129.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 129 regarding what Relator noticed in May or June 2013 or the discussions he had regarding Charles Rutledge, and therefore denies the allegations.

130.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in the first, second and fourth sentences of Paragraph 130 regarding an unidentified item of property, and therefore denies the allegations.  In response to the third sentence of Paragraph 130, DI denies that it would always take at least six to twelve weeks to ship high-priority items from the QCC in Texas to Kabul, but admits that it would generally not be possible to ship an item from the QCC in Texas to Kabul in just one day.  By way of further

response, DI avers that when DI personnel in Afghanistan could not access DynMRO due to internet connectivity issues, they would sometimes ask DI personnel at the QCC to use DynMRO to mark property as received in Afghanistan.  All allegations not admitted are denied.

131.    DI admits that in June 2013, Richard Werner went to the QCC in Texas, found there certain components he believed may have been returned from Afghanistan, but were still marked in DynMRO as delivered in Afghanistan, and that Mr. Rutledge was a DI employee who worked in the QCC at one point in time.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 131, and therefore denies the allegations.

132.    DI admits that Brian Benton was a QCC Supervisor who had been temporarily assigned to Kabul to assist with the CNTPO inventory.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 132, and therefore denies the allegations.

133.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 133 regarding a conversation that purportedly took place in 2013, and Relator's impressions or concerns regarding the purported conversations, and therefore denies the allegations.

134.    DI denies that there was any order to falsify property records, or any falsification of property records, for purposes of expediting payments or for any other reason.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 134, and therefore denies the allegations.

135.    DI denies the allegations in Paragraph 135.

136.     DI denies the allegations in Paragraph 136, except admits that Michael Schreiner was a logistics supervisor for CNTPO.

137.     DI admits only that some items that were located at the QCC warehouse in Texas had been marked in DynMRO as delivered to Afghanistan.  DI denies all remaining allegations in Paragraph 137.

138.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 138 regarding the estimates made by Relator, and therefore denies the allegations.

139.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 139, and therefore denies the allegations.

140.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 140 regarding unidentified items, and therefore denies the allegations.

141.     DI denies that items in the QCC were lost in the system.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 141, and therefore denies the allegations.

142.     DI admits that certain avionics test equipment needed to be calibrated.  DI denies all other allegations in Paragraph 142.

143.     DI denies that its conduct with respect to the referenced avionics equipment caused any damage to the United States.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 143, and therefore denies the allegations.

27

144.    DI admits that certain avionics components were Russian-made components which were to be used in Russian-made aircraft.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 144, and therefore denies the allegations.

145.    DI denies the allegations in Paragraph 145.

146.    The allegations in the first sentence of Paragraph 146 are denied.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 146, and therefore denies the allegations.

147.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 147 regarding the orders the Air Force purportedly placed with Lockheed Martin, and therefore denies the allegations.

**D.      DynCorp Failed to Maintain a Reliable Property Management System to Track Inventory, as Required by Law and Contract, Which Resulted in Loss and Wastage of Millions of Dollars of Government Property**

148.    DI admits that FAR 52.245-1 provides that the contractor must "have a system of internal controls to manage (control, use, preserve, protect, repair, and maintain) Government property in its possession," and provides that, "Property records shall enable a complete, current, auditable record of all transactions . . . ."  DI denies that FAR 52.245-1 was incorporated into the Subcontract.  To the extent that Relator purports to include within his allegations any other FAR provision or any DFARS provisions, DI lacks knowledge or information sufficient to form a belief about the truth of these allegations and denies the allegations on that basis.  All allegations not admitted are denied.

149.    DI admits that its proprietary property management system is known as DynMRO.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first sentence of Paragraph 149, and therefore DI denies the

allegations.  DI further admits that it agreed to develop and implement a management

information system, that the system that was developed was known as MIS, and that the MIS

system was to be developed so that it could be turned over to the Afghan government.  DI

incorporates its responses to Paragraphs 78-82 as though set forth fully herein.  All allegations

not admitted are denied.

150.    DI denies the allegations in Paragraph 150.

**1.    Most DynCorp Employees Assumed That MIS Was Tracking GFE, but in Fact MIS Was Not Tracking Anything, Much Less GFE**

151.    DI lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 151 regarding his initial training in September and October of 2012,

and therefore denies the allegations.

152.    DI admits that Relator did not direct access to MIS during the weeks after his

arrival in Afghanistan.  DI lacks knowledge or information sufficient to form a belief about the

truth of the remaining allegations in Paragraph 152, and therefore denies the allegations.

153.    DI lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 153, and therefore denies the allegations.

154.    DI lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 154, and therefore denies the allegations.

155.    DI admits that Randy Carr was a Logistics Manager on CNTPO.  DI lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations

in Paragraph 155, and therefore denies the allegations.

156.    DI lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 156 regarding the timing or nature of Relator's purported concerns,

and therefore denies the allegations.

157.    DI admits that certain aircraft parts were furnished by Lockheed Martin to Northrop Grumman, and then by Northrop Grumman to DI.  DI admits that certain parts so provided could be referred to as GFE.  DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 157, and therefore DI denies the allegations.

158.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 158 regarding Relator's purported conversation with Carlos Morales in mid-November 2012 or Relator's concerns regarding the purported substance of the conversation, and therefore denies the allegations.  All remaining allegations are denied.

159.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 159 regarding the quoted, undated conversations with DI employees, and therefore denies the allegations.  DI lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Northrop Grumman's conduct, and therefore denies the allegations.   All other allegations are denied.

160.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 160 regarding Relator's purported conversations with DI employees in late November and early December 2012, and therefore denies the allegations.

161.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 161 regarding Relator's purported conversation with a DI employee in December 2012.  DI denies all other allegations in Paragraph 161.

162.    DI admits that Relator traveled to Fort Worth from Afghanistan on or about December 15 and 16, 2012.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 162 regarding a meeting or discussion that took place in December 2012, and therefore denies the allegations.

163.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 163 regarding a meeting or discussion with or among DI employees in December 2012 and therefore denies the allegations.  All other allegations are denied.

164.    DI denies the allegations in Paragraph 164.

165.    DI admits that Rhonda Dodson is the Enterprise Property Director at DI.  DI denies that Ms. Dodson agreed that there was a problem with the management information system, that such a system could be decertified, that all DI contracts could be in jeopardy based upon that purported decertification, or that any problem needed to be reported to Ms. Dodson's supervisors.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 165, and therefore DI denies the allegations.

166.    DI denies that in late January 2013 the development of MIS was "scrapped."  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 166, and therefore denies the allegations.

167.    With respect to the allegations in the second sentence of Paragraph 167, DI lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the percentage of personnel resources for the CNGS Contract that was related to property management and logistics.  DI denies all other allegations in Paragraph 167.

168.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 168 regarding Relator purports to have learned in January 2013, and therefore denies the allegations.  All allegations not admitted are denied.

2.     **DynCorp Was Supposed to Track Contractor Acquired Property in DynMRO but It Was Dysfunctional and Unreliable**

a.     **DynMRO Was Riddled With Errors and Wholly Unreliable**

169.    DI admits that it tracked Contractor Acquired Property in DynMRO.  DI also admits that Contractor Acquired Property can become Government Furnished Property if other requirements are met.  All allegations not admitted are denied.

170.    DI admits that DynMRO was operational.  DI denies the remaining allegations in Paragraph 170.

171.    DI admits that Chris Lawson, Subcontracts Administrator, emailed three DI employees on February 12, 2013, and informed those three DI employees that a Government official requested a listing of "all AGSE" procured since the beginning of the Task Order by February 15, 2013.  DI denies all characterizations of the email.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 171 regarding unidentified DI employees, and therefore denies the allegations.  All allegations not admitted are denied.

172.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 172 regarding unidentified DI employees, and therefore denies the allegations.  All allegations not admitted are denied.

173.    DI admits that Blane Fix was a logistics manager on the CNTPO program.  DI lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 173 regarding the purported list of DynMRO property Relator alleges he reviewed, and therefore denies the allegations.

174.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 174 regarding the errors he alleges to have identified in the

unidentified list of DynMRO property, and therefore DI denies the allegations.  All allegations

not admitted are denied.  DI incorporates its responses to Paragraphs 97-100 as though set forth

fully herein.

175.    DI lacks knowledge or information sufficient to form a belief about the truth of

the allegations in the first and second sentences of Paragraph 175, including allegations

regarding the time Relator spent reviewing the referenced data and Relator's beliefs regarding

the actions Northrop Grumman and DI needed to take, and therefore DI denies the allegations in

those sentences.  DI denies the allegations in the third sentence of Paragraph 175.

176.    DI admits that Section VIII of the Complaint purports to discuss the alleged

unreliability of DynMRO.  DI incorporates its responses to Section VIII as though set forth fully

herein.  All allegations not admitted are denied.

> **b.**    **DynMRO Had a Fundamental Design Flaw -- It Could Not Recognize Variations of Cyrillic Characters - That Rendered It Unable To Track Millions of Dollars of Russian-Manufactured Property Utilized in the CNTPO Program**

177.    DI admits that CNTPO utilizes Russian-made aircraft and that one goal of the

program was to turn over certain operations and equipment to the Afghan Government.  DI lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations

in Paragraph 177, and therefore denies the allegations.

178.    DI admits that it procured certain aircraft-related items of property for the

CNTPO program from Russia and Ukraine.  DI lacks knowledge or information sufficient to

form a belief about the truth of the remaining allegations in Paragraph 178, including allegations

regarding the amounts invoiced to the Government by Northrop Grumman under the CNGS

Contract, and therefore denies the allegations.  DI denies that it directly "billed the Government"

anything, and avers that only Northrop Grumman as the prime contractor submitted invoices to the Government.

179.     DI admits that it procured components for use on the CNTPO program from Simplex Aerospace and that certain Simplex Aerospace components were delivered to DI's QCC facility in Texas with certain accompanying paperwork in the Russian language.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 179, and therefore denies the allegations.

180.     DI admits that DynMRO does not allow for inputs into the system in the Cyrillic alphabet of the Russian language.  DI avers that MIS allowed for Cyrillic inputs.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 180, and therefore denies the allegations.  All allegations not admitted are denied.

181.     DI admits that some shipments from Simplex Aerospace included Cyrillic characters on the packaging.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 181, and therefore denies the allegations.  DI specifically denies that it directly "billed" the Government" anything, and avers that only Northrop Grumman, as the prime contractor, submitted invoices to the Government.  All allegations not admitted are denied.

182.     DI denies the allegations in Paragraph 182.

**E.      DynCorp Consistently Lied to the Government About the Status of Deliveries In Order to Cover Up Deficiencies in DynCorp's Property Management System**

183.     DI denies the allegations in Paragraph 183.  By way of further response, DI avers that Northrop Grumman provided Equipment Backorder Status Reports ("EBSRs") to the Government.

34

184.    DI admits that the EBSRs tracked shipments of items to be delivered for use on the CNTPO program.  All characterizations of the EBSRs or of the information they included are denied.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 184, and therefore denies the allegations.  All allegations not admitted are denied.

185.    DI admits that the EBSRs did not include a "delivery past due" column.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 185, and therefore denies the allegations.

186.    DI admits that Relator added a column entitled "EDD Past Due" to the EBSRs for 0-30 days, 31-60 days, and 61-90 days.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 186, and therefore denies the allegations.

187.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 187, and therefore denies the allegations.

188.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 188, and therefore denies the allegations.

189.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 189, and therefore denies the allegations.

190.    In response to the first sentence of Paragraph 190, DI admits that on February 14, 2013, Blane Fix sent an email to Relator regarding "EDD Review," and that Relator responded to Mr. Fix's email on the same day.  All characterizations of those emails are denied.  DI further admits that a buyer with the appropriate permissions has the ability to change the estimated delivery date in DynMRO after contacting a vendor and receiving more current delivery

information.  DI lacks knowledge or information sufficient to form a belief about the truth of the

remaining allegations in Paragraph 190, and therefore denies the allegations.  All allegations not

admitted are denied.

191.     DI lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 191, and therefore denies the allegations, except that DI denies that

it reported false delivery information to the Government.

192.     DI denies the allegations in Paragraph 192.

**F.      Representative Examples of Valuable Government Property That Defendants Lost or Wasted on the CNTPO Program Due To Defendants' Reckless Disregard for Contractual and Legal Requirements**

**1.      Defendants Lost or Wasted at Least Four "Push Packs" Valued at Several Million Dollars Each**

193.     DI admits that "push packs" consists of large sealed containers of property to be

used to establish new bases to support aircraft.  DI lacks knowledge or information sufficient to

form a belief regarding the truth of the remaining allegations in Paragraph 193, and DI therefore

denies the allegations.

194.     In response to the first sentence in Paragraph 194, DI admits that push packs are

items of GFE and Northrop Grumman received push packs for use on the CNTPO program.  All

remaining allegations in the first sentence of Paragraph 194 are denied.  DI admits that Northrop

Grumman did not prepare proper paperwork to transfer custody of the push packs to DI, DI did

not receive nor inventory the property in DynMRO, and that the property was not listed in

DynMRO.  DI lacks knowledge or information sufficient to form a belief regarding the truth of

the remaining allegations in Paragraph 194, and therefore denies the allegations.  All allegations

not admitted are denied.

195.     DI admits that Julie Sorenson is a logistics manager at Northrop Grumman, that Ms. Sorenson provided a spreadsheet to Relator in or about April 2013, that Ms. Sorenson described the spreadsheet as the delivery manifest for Delivery Order Number Seven, and that Ms. Sorenson wrote that she wanted the existence of the items on the delivery manifest inventoried.  All other allegations in Paragraph 195 are denied.

196.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 196, including the allegations related to the conduct of the identified Northrop Grumman employee, and therefore denies the allegations.

197.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 197, and therefore denies the allegations.  By way of further response, DI denies that base personnel could not obtain supplies and equipment in a timely manner through DI's procurement and supply chain system and that in the spring of 2013, the push packs had been sitting at the base warehouse in Kabul for two years.

198.     DI denies the allegations in the first, fourth, and fifth sentences of Paragraph 198. DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 198, and therefore denies the allegations.  All allegations not admitted are denied.

199.     DI admits that the delivery manifest provided by Northrop Grumman did not list serial numbers.  DI denies that the delivery manifest listed items by their names or descriptions only.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 199, and therefore denies the allegations.  All allegations not admitted are denied.

37

200.     DI admits that Relator and other DI employees tried to update DynMRO with information about the items in Delivery Order Seven.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 200, and DI therefore denies the allegations.  All allegations not admitted are denied.

201.     DI lacks knowledge or information sufficient to form a basis about the truth of the allegations in the first sentence of Paragraph 201.  DI admits that there was no need to track material after it was "issued out" to base personnel.  DI denies the remaining allegations in Paragraph 201.

202.     DI denies the allegations in Paragraph 202.

203.     DI lacks knowledge or information sufficient to form a belief about the truth the allegations in Paragraph 203, including allegations regarding the lack of disclosures by Northrop Grumman to the Government, and therefore denies the allegations in Paragraph 203.  By way of further response, DI denies that the push packs were rendered without value due to property management failures by DI.  All other allegations in Paragraph 203 are denied.

**2.     DynCorp Lost Track of or Rendered Unserviceable Aircraft Parts Valued at Several Million Dollars**

204.     DI admits that certain property on the CNTPO program, including aircraft parts, was GFE and that Lockheed Martin provided some of this property to Northrop Grumman.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 204, and therefore denies the allegations.

205.     DI admits that "material" includes aircraft parts that lose their individual identity through incorporation into other items.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 205, and therefore denies the allegations.

38

206.    DI admits that aircraft parts are important to life safety of aircraft personnel and that repair parts are designated Class IX in the Department of Defense Classes of Supply.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 206, and therefore denies the allegations.

207.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 207, including allegations regarding Relator's communications with Northrop Grumman employees and their response, and therefore denies the allegations.

208.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 208, and therefore denies the allegations.

209.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 209, and therefore denies the allegations.  DI denies that it kept spreadsheets that made it "impossible to provide accurate inventory levels" to the Government.

210.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 210, including allegations regarding Relator's purported research and his alleged communications with Northrop Grumman employees, and therefore denies the allegations.

211.    DI denies the allegations in Paragraph 211.

**3.      DynCorp Lost Track of Fuel Valued at Several Million Dollars**

212.    DI admits that one of its responsibilities under the Subcontract was to purchase aviation fuel at non-Department of Defense facilities, when required to meet the requirements of each Task Order.  DI denies the remaining allegations in Paragraph 212.

213.    DI admits that on the CNTPO program, purchase orders for CAP, including fuel were submitted via DynMRO.  DI further admits that it procured certain aviation fuel from local vendors in Afghanistan.  DI denies that it did not properly receive fuel.  DI lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations in Paragraph 213, and therefore denies the allegations.  All allegations not admitted are denied.

214.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 214, and therefore denies the allegations.

215.    DI admits that the theft of fuel was a problem for the Government and for Government contractors, including DI, in Afghanistan.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 215, and therefore denies the allegations.

216.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 216, and therefore denies the allegations.

217.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 217, and therefore denies the allegations.

218.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 218, and therefore denies the allegations.

**4.    DynCorp Failed to Account for Surplus Property**

219.    DI admits that the Subcontract identifies the role of the Defense Reutilization Marketing Office ("DRMO") in the disposal of Government property that cannot be repaired or overhauled.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 219, as Relator does not specify the FAR provisions on which he purports to rely, and therefore denies the allegations.

220.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 220, because Relator does not identify the FAR provisions on which he purports to rely, and therefore denies the allegations.

221.    DI denies the allegations in Paragraph 221.

222.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 222, and therefore denies the allegations.

223.    DI admits that it was a contractor on the G-222 contract, which operated partially in Kabul.  DI further admits that it inventoried items in February and March 2013 on the CNTPO program.  DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 223, and therefore denies the allegations.

224.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 224, and therefore denies the allegations, except DI denies that its handling of surplus or unserviceable items caused any loss to the Government.

VIII.   **DEFENDANTS DELIBERATELY CONCEALED FROM THE GOVERNMENT THEIR LOSS AND WASTAGE OF MILLIONS OF DOLLARS OF GOVERNMENT PROPERTY**

A.      **DynCorp and Northrop Thwarted Relator's Efforts to Correct Deficiencies in Defendants' Property Management System and to Honestly Account to the Government for Missing Property**

225.    DI admits that in early December 2012, Relator began communicating with some DI employees about what he thought might be issues with property management on CNTPO.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 225, including allegations regarding Relator's purported communications with Northrop Grumman employees, and therefore denies the allegations.

226.    At DynCorp's corporate office, Relator reported his concerns over property management issues to Becky McClendon, Melissa Smith, Ray Nelson, Rhonda Dodson and Guy Frazier, among others.  Although they acknowledged "issues" in property management, and even acknowledged that DynCorp had failed to perform many important property management functions over the previous five years, they tried to downplay the seriousness of the issues.  DI admits that Relator reported what he thought might be issues with the property management to

Rebecca McClendon, Melissa Smith, and Ray Nelson.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 226, and therefore denies the allegations.

227.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 227 regarding Relator's purported communications with Northrop Grumman employees, and therefore denies the allegations.

228.    DI admits that Relator recommended that DI prepare a Corrective Action Plan. DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 228, including allegations regarding the purported conduct of Northrop Grumman, and DI therefore denies the allegations, except that DI denies that it sabotaged any of Relator's efforts or refused to report losses to the Government.

       1.      **Relator Prepared a Proposed Corrective Action Plan Designed to Address Property Management Deficiencies and Identify Losses to the Government**

229.    DI admits that DynCorp International LLC and Relator were parties to an employment contract, that DI agreed to grant Relator R&R in the United States beginning on December 15, 2012, and that DI agreed that Relator would do temporary duty in Fort Worth during his R&R.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 229, and therefore denies the allegations.

230.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 230 regarding the purported conduct of a Northrop Grumman employee, and therefore denies the allegations.

231.    DI admits that Relator prepared a draft corrective action plan in late December or early January 2013, but denies that Relator worked with Ms. Smith to finalize the corrective action plan.  DI further admits that a corrective action plan is intended to identify areas for

improvement.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 232, and therefore denies the allegations.  All allegations not admitted are denied.

232.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 232, and therefore denies the allegations.

233.     DI admits that the Buffalo Group is an independent company which provides temporary personnel to United States government contractors and that Relator discussed using Buffalo Group employees to participate in the inventory of items on the CNTPO program.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 233, and DI therefore denies the allegations, except that DI denies it refused to use or pay for the work of Buffalo Group employees in connection with the CNTPO program.

234.     DI admits that Relator returned to Afghanistan in January 2013.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 234, including Relator's purported meetings with Northrop Grumman employees in late January and early February 2013, and DI therefore denies the allegations.

235.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 235, including allegations regarding Relator's purported development of a "Gantt Chart" and his discussions with Northrop Grumman employees about the alleged chart, and therefore denies the allegations.

236.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 236 regarding Relator's purported communications with Northrop Grumman employees, and DI therefore denies the allegations.

43

**2.** **Northrop and DynCorp Corporate Leadership Refused to Pay the Nominal, Additional Costs Necessary to Implement the Corrective Action Plan**

237.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 237, because Relator does not identify the DI and Northrop Grumman individuals who were purportedly meeting, where they were meeting and when, and DI therefore denies the allegations.

238.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 238, including the allegations of what Relator purportedly learned from Ray Nelson in January 2013, and therefore denies the allegations on that basis.

239.     DI admits that DI and Northrop Grumman personnel met to discuss property management, and some of those discussions may have taken place during January and February 2013.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 239, including the dates of and participants in each of such meetings, and therefore denies the allegations on that basis.

240.     DI admits that there were discussion between DI and Northrop Grumman regarding the way in which the Buffalo Group employees would be paid, with DI agreeing to make the payment.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 240, and therefore denies the allegations.

241.     DI denies the allegations in Paragraph 241.

242.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 242, and therefore denies the allegations.

243.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 243, regarding a Northrop Grumman employee, and therefore denies the allegations.

3.  **Northrop Gutted the Necessary Remedial Steps Called for by the Corrective Action Plan and Substituted a Whitewash "Inventory" in Place of the Plan**

244.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 244, including the purported communications between Relator and a Northrop Grumman employee, and therefore denies the allegations.

245.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 245, including the allegations regarding purported communications between Relator and Northrop Grumman, and therefore denies the allegations.

246.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 246, including the allegations about Relator's purported communications with a Northrop Grumman employee, and DI therefore denies the allegations.

247.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 247, including about a purported meeting between Relator and a Northrop Grumman employee, and DI therefore denies the allegations.

248.  DI admits that Mr. Munger, Mr. DiLorenzo, Mr. Burpee, and Relator were present at meetings at certain times on the CNTPO program.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 248, including allegations related to a purported action and statement of a Northrop Grumman employee, and DI therefore denies the allegations.

249.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 249, and DI therefore denies the allegations.

250.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 250, including about a purported meeting between Relator and Northrop Grumman employees, and DI therefore denies the allegations.

251.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 251, including about purported statements and instructions from a Northrop Grumman employee, and DI therefore denies the allegations.

252.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 252, and DI therefore denies the allegations.

253.     DI admits the existence of a draft corrective action plan, but denies all characterizations of that document.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 253, and DI therefore denies the allegations.

254.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 254, including about an inventory plan attributed to a Northrop Grumman employee, and therefore denies the allegations.

255.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 255, including about an inventory plan attributed to a Northrop Grumman employee, and therefore denies the allegations.

256.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 256, as Relator has not specified the FAR provisions on which he purports to rely, and DI therefore denies the allegations.

257.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 257, including the purported conduct of a Northrop Grumman employee, and DI therefore denies the allegations.

258.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 258, including the allegations regarding the purported intentions

of a Northrop Grumman employee and the manner which Northrop Grumman billed for the labor of its employees, and DI therefore denies the allegations.

259.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in the first and second sentences of Paragraph 259, because Relator has not specified the FAR provisions on which he purports to rely, and DI therefore denies the allegations.  With regard to the third sentence of Paragraph 259, DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations, including about the purported conduct of a Northrop Grumman employee, and therefore denies the allegations.

260.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 260, including about the inventory plan attributed to a Northrop Grumman employee, and DI therefore denies the allegations.

261.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 261, including about Relator's purported communications with Northrop Grumman employees, and DI therefore denies the allegations.

262.     DI admits that Relator sent inventory sheets to some CNTPO personnel in Afghanistan on February 5, 2013.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 262 and, therefore denies the allegations.

263.     DI lacks knowledge or information sufficient to sufficient to form a belief regarding the truth of the allegations in Paragraph 263, including allegations about Relator's purported communications with Northrop Grumman employees, and DI therefore denies the allegations.

264.     DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 264, including allegations related to the purported instructions of the referenced Northrop Grumman employees, and therefore denies the allegations.

**4.      The Whitewash Inventory Predictably Concealed the Government's Actual Losses**

265.     DI admits that from early February to March 2013, DI employees conducted an inventory and that some of these employees were pulled from their regular responsibilities.  DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 265, and therefore denies the allegations.

266.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 268, including allegations about a Northrop Grumman employee, and therefore denies the allegations.

267.     DI admits that Relator sent an email on March 21, 2013, in which he described the alleged actions of Mr. Munger, a Northrop Grumman employee, in substantially the same terms as alleged in Paragraph 267.  However, DI lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 267, and therefore denies the allegations.

268.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 268, and DI therefore denies the allegations.

269.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 269, and DI therefore denies the allegations.

270.     DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 270, and DI therefore denies the allegations.

271.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 271, and DI therefore denies the allegations.

272.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 272, and DI therefore denies the allegations.

**B.    Defendants Knowingly Provided the Government With an Incomplete and Misleading Property Book to Conceal Defendants' Loss of Millions of Dollars of Government Property**

**1.    After the Government Announced It Was Going to Recompete the CNGS Contract, Defendants Were Required to Produce a Property Book**

273.    DI admits that on or about June 18, 2013, the Air Force issued Solicitation No. W58RGZ-13-R-0010 under the Future Flexible Acquisition and Sustainment Tool ("F2AST") for the follow-on contract to the CNGS Contract.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 273, and therefore denies the allegations.

274.    DI admits that on or about June 18, 2013, the Air Force issued Solicitation No. W58RGZ-13-R-0010 under the Future Flexible Acquisition and Sustainment Tool ("F2AST") for the follow-on contract to the CNGS Contract.  DI denies any characterizations of the Solicitation document.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 274, and therefore denies the allegations.

275.    DI admits that winning the recompete would have been important to its business, as would be winning any government contract.  DI further admits that it decided not to team exclusively with Northrop Grumman.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 275, and therefore denies the allegations.

276.     DI admits that Change Notice No. 11 to the Subcontract extended the period of performance from August 24, 2012 to September 30, 2013.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 276, and therefore denies the allegations.

277.     DI admits the first sentence of Paragraph 277.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 277, and therefore denies the allegations.

278.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 278, and therefore denies the allegations.

279.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 279, and therefore denies the allegations.

280.     DI denies the allegations in Paragraph 280.

281.     DI admits that a property book generally includes items of durable government property, which are expected to last beyond the program.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 281, as Relator does not specify what FAR clause he relies upon in the allegations, and DI therefore denies the allegations.

282.     DI admits that a property book can be a subset of data in an electronic property management system.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 282, and therefore denies the allegations.

283.     DI admits that it was asked to provide a property book in or about late March 2013, but DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 283, and therefore denies the allegations.

50

284.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 284, and therefore denies the allegations, except that DI denies that there were "widespread problems" in the property management system.

285.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 285, including about the purported conduct of Northrop Grumman employees, and therefore denies the allegations.

286.    DI admits that it produced a property book on June 30, 2013.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 286, and therefore denies the allegations.

**2.    DynCorp Devised a Plan to Produce a Property Book That Would Conceal Lost Government Property**

287.    DI admits that there were communications in or about March 2013 regarding the preparation of a property book and that Relator participated in these discussions, including at times when he was at DI's offices in Texas.  All remaining allegations are denied.

288.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 288, and therefore denies the allegations.

289.    DI admits that Joan Albaugh participated in the effort to provide a property book. DI denies all remaining allegations in Paragraph 289.  DI incorporates its responses to Paragraph 189 as though set forth fully herein.

290.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 290, and therefore denies the allegations.

291.    DI denies the allegations in Paragraph 291.

292.    DI denies the allegations in Paragraph 292.

a.      **DynCorp Intended to Produce a Property Book that Would Conceal Lost GFE**

293.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 293, and therefore denies the allegations.

294.    DI denies that it could have but decided not to request a list of GFE from the Government, because decisions regarding such a request, or any communications with the Government, would have to be made by the prime contractor, Northrop Grumman.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 294, and therefore denies the allegations.

295.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 295, and therefore denies the allegations, except that DI denies that it took any action to prevent the detection of any lost items.

296.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 296, and therefore denies the allegations, except that DI denies that it took any action which prevented the Government from detecting or claiming losses of property.

297.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 297, and therefore denies the allegations.

298.    In response to the first sentence of Paragraph 298, DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 298, and therefore denies the allegations.  DI denies the allegations in the second sentence of Paragraph 298.

b.      **DynCorp Intended to Produce a Property Book That Would Conceal Lost CAP**

299.    DI admits that DynMRO contains types of entries for CAP that are not included for GFE.  DI further admits that Northrop Grumman billed the Government for certain items purchased by DI.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 299, and therefore denies the allegations.

300.    DI admits that corrections to DynMRO data, if needed, could include changes to data in the system and the addition of items that had been procured if they should have been, but were not, in the system.  All allegations not admitted are denied.

301.    DI admits that if data in DynMRO is updated, the updated data can be used as part of an inventory process, which can identify items not found in their expected locations.  All allegations not admitted are denied.

302.    DI denies the allegations in Paragraph 302.

303.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 303, and therefore denies the allegations.

304.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 304, and therefore denies the allegations.

305.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 305, and therefore denies the allegations.

306.    DI admits that the misclassification of an item can originate with DI personnel in Texas.  DI denies the allegation that the catalog was "not program-specific."  DI avers that, at certain times during the CNTPO program, the catalogue was program specific.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 306, and therefore denies the allegations.

53

307.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 307, and therefore denies the allegations.

308.    DI admits that the use of an inaccurate description for an item could require additional steps in the shipping or inventory process, but denies that such an inaccuracy would render either process impossible. DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 308, and therefore denies the allegations.

309.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 309, and therefore denies the allegations.

310.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 310, including about a communication on April 25, 2013 and any response, and therefore denies the allegations.

311.    DI denies the allegations in the first sentence of Paragraph 311. DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 311, as Relator does not specify the FAR provisions on which he purports to rely, and DI therefore denies the allegations.

312.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 312, and therefore denies the allegations.

313.    DI denies the allegations in Paragraph 313.

314.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 314, and therefore denies the allegations.

315.    DI admits that Ms. Albaugh provided inventory sheets for use on the CNTPO program in or around May and June 2013. DI denies the remaining allegations in Paragraph 315.

316.    In response to the first sentence of Paragraph 316, DI admits that Relator drafted a request for a $400 threshold of property to be included in the June 2013 Property Book to be provided to Northrop Grumman.  In response to the second and third sentences of Paragraph 316, DI lacks knowledge or information sufficient to form a belief about the truth of the allegations, as Relator does not specify the FAR provisions upon which he purports to rely, and therefore DI denies the allegations.  In response to the fourth sentence of Paragraph 316, DI lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies the allegations.  All allegations not admitted are denied.

317.    DI admits that Relator drafted a request memorandum and that Mr. Fisher forwarded the request to Northrop Grumman.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 317, and therefore denies the allegations.

318.    DI admits that DI and Northrop Grumman began work on the preparation of the property book with the reasonable expectation that the proposed threshold would be approved by the Government.  DI further admits that Melissa Smith informed Relator and others that, without Contracting Officer approval of a threshold amount, they needed to include all equipment, special tooling, and special test equipment in the property book. All allegations not admitted are denied.

**3.      DynCorp Began to Doubt it could Produce Even a Flawed Property Book by the Deadline and Directed Relator to Put Together a Manual Property Book**

319.    DI admits that Ms. Albaugh provided reports which identified the work being done and that certain reports included her expectation that the work would be completed by June 30, 2013.  All other allegations are denied.

320.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 320, including the allegations regarding his purported objections and intentions, and DI therefore denies the allegations.  DI denies all other allegations in Paragraph 320.

321.     DI admits that Relator sent an email on or June 1, 2013 that states that DI Texas property management personnel "proposed to 'demonstrate a good faith effort moving in the right direction. . . .'" DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 321, and therefore denies the allegations.

322.     DI admits that Relator sent an email to certain DI personnel on June 1, 2013, in which he suggested that DI "be prepared for the possibility that we may need to produce a manual PB 'just in case' we encounter any delay in DynMRO updating/uploading."  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 322, and therefore denies the allegations.

323.     DI admits that the June 30, 2013 Property Book was produced on an excel spreadsheet, that a manual property book on such a spreadsheet can be corrected and updated more quickly than making entries into the DynMRO system, that DynMRO tracks a record of changes made in the system, and that only personnel with proper authorization can make certain changes in the system.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 323, therefore denies the allegations.

324.     DI admits data can be exported onto an Excel spreadsheet from DynMRO.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 324, and therefore denies the allegations.  All allegations not admitted are denied.

325.    DI admits that it was advised by Northrop Grumman that NSRWA ultimately decided not to accept the $400 threshold.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 325, as Relator does not specify the FAR and DFARS provisions upon which he purports to rely, and DI therefore denies the allegations.  All allegations not admitted are denied.  DI incorporates its response to Paragraph 350 as if set forth fully herein.  DI also incorporates its response to Paragraph 351 as if set forth fully herein as the reference to Paragraph 350 appears to be in error.

326.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 326, and therefore denies the allegations, except that DI denies that the property book was not going to be compliant with the FAR.

327.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 327, and therefore denies the allegations.

328.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 328, and therefore denies the allegations, except that DI denies that it was working on a property book that was not compliant with the FAR.

329.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 329, and therefore denies the allegations.

330.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 330, and therefore denies the allegations.

4.      **While Relator Worked on the Manual Property Book, DynCorp Officials Falsified Data in DynMRO and Took a Number of Other Desperate and Non-Compliant Actions in Their Attempt to Produce a Property Book That Minimized Losses**

331.    DI admits that in late May and early June 2013, Ms. Albaugh was working to produce a property book by June 30, 2013.  DI denies the remaining allegations in Paragraph 331.

332.    DI denies the allegations in Paragraph 332.

333.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 333, including allegations regarding the timing when Relator reviewed or noticed certain information, and therefore denies the allegations.

334.    DI admits that for certain items where the acquisition cost was not available, DI sometimes used a value of one cent as a placeholder until the value could be determined.  The remaining allegations in Paragraph 334 are denied.

335.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 335, and therefore denies the allegations.

336.    DI admits that acquisition cost is important information and can help the Government to determine the value of property on a contract.  DI further admits that the value of the property on CNTPO could be an important figure for NSRWA, that certain items in the property book could be managed by the contractor on a follow on contract, if any, and that certain items may need to be purchased by a later contractor.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 336, and denies them on that basis.

337.    DI denies the allegations in Paragraph 337.

338.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 338, and therefore denies the allegations.

339.    DI admits that for certain items where the acquisition cost was not available, DI sometimes used a value of one cent as a placeholder until the value could be determined.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 339, and therefore denies the allegations.

340.    DI denies the allegations in Paragraph 340.

341.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 341, as Relator does not specify the FAR and DFARS provisions upon which he purports to rely, and DI therefore denies the allegations.

342.    DI denies the allegations in Paragraph 342.

343.    DI admits that Ms. Albaugh made certain adjustments in DynMRO in or around July 2013, but denies that any of these adjustments were improper, false or fraudulent, or intended to hide any losses.  DI lacks knowledge or information sufficient to form a belief regarding the remaining allegations in Paragraph 343, and denies them on that basis.

344.    DI denies the allegations in Paragraph 344.

345.    DI denies the allegations in Paragraph 345.

346.    DI denies the allegations in Paragraph 346.

347.    DI denies the allegations in Paragraph 347.

348.    In response to the first, third, and fourth sentences of Paragraph 348, DI lacks knowledge or information sufficient to form a belief about the truth of the allegations, including about allegations related to what Relator discovered or noticed, and DI therefore denies the allegations.  In response to the second sentence of Paragraph 348, DI admits that FAR 52.245-1

defines GFE and CAP as two types of government-owned property, but denies that these provisions are included in DI's subcontract with Northrop Grumman.  All allegations not admitted are denied.

349.    DI denies the allegations in Paragraph 349.

### 5.    DynCorp Decided to Submit a Non-Compliant Manual Property Book and Northrop Approved the Decision

350.    DI admits that on or about June 18, 2013, the Air Force issued Solicitation No. W58RGZ-13-R-0010 under the Future Flexible Acquisition and Sustainment Tool (F2AST) for the follow-on contract to the CNGS Contract.  DI further admits that the Solicitation set a bid deadline of July 18, 2013.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 350, and therefore denies the allegations.

351.    DI denies the allegations in the first sentence of Paragraph 351.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 351, including allegations related to purported discussions between Northrop Grumman and Mr. Trudeau, and therefore denies the allegations.

352.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 352, and therefore denies the allegations.

353.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 353, including allegations related to a purported email which contains the quoted language, and therefore denies the allegations.

354.    DI denies the allegations in the first sentence of Paragraph 354.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 354, and therefore denies the allegations.

355.    DI admits that it agreed to and did provide a property book by June 30, 2013 and to provide additional information by September 30, 2013.  DI denies the remaining allegations in Paragraph 355.

356.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 356, and therefore denies the allegations.

357.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 357, and therefore denies the allegations.

358.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 358, and therefore denies the allegations.

359.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 359, and therefore denies the allegations.

360.    DI admits that certain personnel on the CNTPO program referred to the period between July 1, 2013 and September 30, 2013 as a reconciliation period during which further inventory activity would occur.  DI denies the remaining allegations in Paragraph 360.

**6.      DynCorp Delivered the Non-Compliant Manual Property Book to the Government in a Format Designed to Look Like a Compliant Property Book**

361.    DI admits that Relator provided a copy of a property book to Mr. Nelson on June 30, 2013.  DI further admits that Mr. Nelson provided a copy of the email and attached property book to Scott Wagner and Doug Burpee at Northrop Grumman.  DI avers that Relator also provided a copy of the property book directly to Julie Sorenson at Northrop Grumman.  All characterizations of these emails are denied.  DI denies that the property book provided on June 30, 2013 had 13,600 lines and 15 columns of data.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 361, and therefore denies the allegations.  All allegations not admitted are denied.

362.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 362, and therefore denies the allegations.

363.     DI denies the first sentence of Paragraph 363.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 363, and therefore denies the allegations.

364.     DI denies the first and second sentences of paragraph 364.  DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 364, and therefore denies the allegations.

365.     DI denies the allegations in Paragraph 365.

**IX.     DEFENDANTS ARE LIABLE TO THE GOVERNMENT UNDER THE FCA IN THE AMOUNT OF SEVERAL HUNDRED MILLION DOLLARS FOR MISMANAGING THE GOVERNMENT'S PROPERTY IN THE CNTPO PROGRAM**

366.     DI denies the allegations in Paragraph 366.

367.     DI denies the allegations in Paragraph 367.

368.     DI denies the allegations in Paragraph 368.

369.     DI denies the allegations in Paragraph 369.

370.     DI denies the allegations in Paragraph 370.  DI avers that FAR 52.245-1 was not incorporated into the Subcontract and therefore is not applicable to the Subcontract.  DI further avers that, pursuant to FAR 52.245-1(h)(1), contractors may not be held liable for the loss of Government property unless certain conditions are met, one of which is that the "[l]oss of Government property . . . is the result of willful misconduct or lack of good faith on the part of the Contractor's managerial personnel."

371.     DI denies the allegations in Paragraph 371.

372.     In response to the first sentence of Paragraph 372, DI lacks knowledge or information sufficient to form a belief about the truth of the allegations, including allegations related to the CNGS Contract to which DI was not a party, and therefore denies the allegations. In response to the second sentence of Paragraph 372, DI admits that the quoted language is found in DFARS 252.242-7004(a)(5).  All characterizations of the quoted language are denied.  DI avers that DFARS was not incorporated into its Subcontract with Northrop Grumman.  All allegations not admitted are denied.

373.     In response to the first sentence of Paragraph 373, DI admits the allegations.  All characterizations of DFARS 252.242-7005 are denied.  In response to the second sentence of Paragraph 373, DI avers that 48 C.F.R. § 52.232-16(c)(1) states: (c) *Reduction or suspension*. The Contracting Officer may reduce or suspend progress payments, increase the rate of liquidation, or take a combination of these actions, after finding on substantial evidence any of the following conditions:  (1) The Contractor failed to comply with any material requirement of this contract (which includes paragraphs (f) and (g) below)."  In response to the third sentence of Paragraph 373, DI lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies the allegations.  All allegations not admitted are denied.

374.     DI denies the allegations in Paragraph 374.

375.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 375, including allegations concerning the requirements of the CNGS Contract to which DI was not a party, and therefore denies the allegations.

376.     DI denies the allegations in Paragraph 376.

X.   **DEFENDANTS RETALIATED AGAINST RELATOR FOR THIS EFFORTS TO BRING DEFENDANTS' PROPERTY MANAGEMENT INTO COMPLIANCE WITH THE LAW**

A.   **Relator Consistently Opposed, Protested, and Attempted to Stop Defendants' Violations of the FAR/DFARS and the FCA**

377.   DI denies the allegations in Paragraph 377.

378.   DI denies the allegations in Paragraph 378.

379.   DI denies the allegations in Paragraph 379.

380.   DI admits that Relator prepared a draft of a corrective action plan.  All characterizations of that document are denied.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 380, as Relator has not specified the FAR and DFARS provisions upon which he purports to rely, and therefore denies the allegations.

381.   DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 381, as Relator has not specified the FAR and DFARS provisions upon which he purports to rely, and therefore denies the allegations.

382.   DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 382, including allegations related to Relator's purported communications with Northrop Grumman, and therefore denies the allegations.  To the extent that Relator's parenthetical requires a response, DI incorporates its responses to Paragraphs 315-17 and 350 as if set forth fully herein.  DI also incorporates its response to Paragraph 351 as the reference to Paragraph 350 appears to be in error.  All allegations not admitted are denied.

383.   DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 383, and therefore denies the allegations.

384.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 384, including allegations related to purported communications with a Northrop Grumman employee and on the basis that he fails to specify the FAR and DFARS provisions upon which he purports to rely, and therefore denies the allegations.

385.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 385, and therefore denies the allegations.

386.     DI admits that a memorandum for record dated March 23, 2013 with the Subject, "Concerns regarding the work environment with Northrop Grumman (NG) on site at CNGS/KAIA and FOB's" exists.  DI denies all characterizations of that document.  All allegations not admitted are denied.

387.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 387, and therefore denies the allegations, except that DI denies that there was any effort by Ms. Albaugh to cover up losses of property.

388.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 388, and therefore denies the allegations, except that DI denies that there was any intention to conceal information about property that could not be located or for which DI could not account, if any.

389.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first and second sentences of Paragraph 389, and therefore denies the allegations.  DI denies the remaining allegations in Paragraph 389.

390.     DI denies the allegations in Paragraph 390.

391.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 391, and therefore denies the allegations.

392.     DI admits that for certain items where the acquisition cost was not available, DI sometimes used a value of one cent as a placeholder until the value could be determined.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 392, and therefore denies the allegations.

393.     DI denies the allegations in Paragraph 393.

394.     DI denies the allegations in Paragraph 394.

395.     DI admits that Relator sent an email in late July 2013 to Mr. Rauer and copying Mr. Fisher that included a preliminary projection for potential loss.  DI denies any characterizations of that email.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 395, and therefore denies the allegations.

396.     DI denies the allegations in Paragraph 396.

**B.     Defendants Repeatedly Retaliated Against Relator for His Attempts to Stop Defendants' Violations of the FAR/DFARS and the FCA**

397.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 397, and therefore denies the allegations.

398.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 398, including allegations related to purported communications between Relator and Northrop Grumman employees, and therefore denies the allegations.

399.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 399, including allegations related to purported communications between Relator and Northrop Grumman employees, and therefore denies the allegations.

400.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 400, and therefore denies the allegations.

401.    DI admits that Mr. Nelson's former position was "Program Director."  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 401, including allegations related to purported conversations between a former DI employee and a Northrop Grumman employee, and therefore denies the allegations, except that DI denies that Northrop Grumman interfered with Relator's ability to apply for positions within DI.

## C.    Events Preceding DynCorp's Termination of Relator

402.    DI admits that Relator sent an email in late July 2013, which referred to an estimated potential loss.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 402, and therefore denies the allegations.

403.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 403, and therefore denies the allegations.

404.    DI admits that Relator sent an email on July 23, 2013, which referred to a potential worst case scenario of a loss of $1.9M.  DI denies any characterization of that email. DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 404, and therefore denies the allegations, except DI denies that any extrapolation of Relator's worst case loss of $1.9M, an allegation that DI denies, can be used to determine the purported loss in this case.  All allegation not admitted are denied.

405.    DI denies the allegations in Paragraph 405.

406.    DI admits that on July 23, 2013, Relator sent an email and attached an Excel spreadsheet to Mr. Rauer, and copied Mr. Fisher.  DI further admits that Mr. Rauer sent an email in response to Relator on July 24, 2013.  All characterizations of those emails are denied.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 406, and therefore denies the allegations.

67

407.    DI admits that Relator was scheduled to take R&R beginning on August 13, 2013 and that Relator advised certain personnel at DI that he was planning to work a portion of that period.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 407, and therefore denies the allegations.

408.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 408, including allegations related to what Relator planned to do, and therefore denies the allegations.

409.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 409, including allegations related to what Relator purportedly knew or hoped to do, and therefore denies the allegations.

410.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 410, including allegations related to what Relator purportedly believed, and therefore denies the allegations.

411.    DI denies the allegations in Paragraph 411.

412.    DI admits that Relator booked his flight to Fort Worth with DI's travel agency. DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 412, and therefore denies the allegations.

413.    DI admits that in or about July 2013, DI was informed by Northrop Grumman that Honeywell Technical Services, Inc. would be taking over certain property management functions on the CNTPO program.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 413, including allegations related to the way in which Northrop Grumman planned to pay for the services, and therefore denies the allegations.

D.     **When Northrop and DynCorp Learned That the Government Was Going to Audit CNGS Property Management, DynCorp Abruptly Changed its Strategy, Stopped Its Corrective Efforts, and Terminated Relator**

414.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 414, including allegations related to communications between NSRWA and Northrop Grumman, and therefore denies the allegations.

415.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 415, including allegations related to communications between DCMA and Northrop Grumman about the scope or nature of the purported audit, and therefore denies the allegations.

416.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 416, including allegations related to what Relator purportedly assumed, and therefore denies the allegations.

417.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 417, and therefore denies the allegations.

418.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 418, and therefore denies the allegations.

419.     DI admits that Relator left Kabul on or about August 12, 2013.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 419, and therefore denies the allegations.

420.     DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 420, and therefore denies the allegations.

421.     DI denies the allegations in Paragraph 421.

422.     DI admits that Mr. Fisher sent an email to Relator on September 8, 2013, which informed Relator, "[T]he logistics manager position you are in is being changed to a supply tech

01 Oct 2013." DI denies that Mr. Fisher informed Relator that his position had been eliminated. All characterizations of the email are denied. DI further admits that Relator's FSA was not renewed and Relator's last day of employment at DI was September 30, 2013. DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 422, and therefore denies the allegations. All allegations not admitted are denied.

423.    DI denies that Mr. Fisher's September 8, 2013 email stated that Northrop Grumman directed DI to terminate Relator's position. DI denies all characterizations of that email. DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 423, and therefore denies the allegations.

424.    DI admits that Ms. Albaugh was transferred to a different contract after completing her work on CNTPO. DI denies the remaining allegations in Paragraph 424.

425.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 425, and therefore denies the allegations.

426.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 426, including allegations related to a phone conversation between Relator and Mr. Fisher on September 15, 2013, and therefore denies the allegations.

427.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 427, and therefore denies the allegations.

428.    DI lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 428, and therefore denies the allegations, except that DI denies that it then discontinued property management work, that it excluded any information which might be relevant to auditors, or that DI took any action to conceal any evidence related to its property management work.

70

429.    DI admits that in or about September 2013, Northrop Grumman informed DI that

Honeywell Technical Services, Inc. would be taking over certain aspects of property

management on the CNTPO program.  DI lacks knowledge or information sufficient to form a

belief regarding the truth of the remaining allegations in Paragraph 429, including allegations

related to a purported phone conversation between Relator and Mr. Fisher, and therefore denies

the allegations.

430.    DI denies the allegations in the first, third, and fourth sentences of Paragraph 430.

DI lacks knowledge or information sufficient to form a belief regarding the truth of the

remaining allegations in Paragraph 430, including allegations related to a purported phone call

between Relator and Mr. Fisher, and therefore denies the allegations.

431.    DI denies the allegations in Paragraph 431.

432.    DI admits that there was a "Government shutdown" in October 2013.  DI lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations

in Paragraph 432, including allegations regarding plans the DCMA purportedly shared with

Northrop Grumman, and therefore denies the allegations.

433.    DI lacks knowledge or information sufficient to form a belief regarding the truth

of the allegations in Paragraph 433, including allegations related to decisions made by Northrop

Grumman and Honeywell concerning staffing, and DI therefore denies the allegations, except DI

denies that that there were massive deficiencies in property management.

**E.      Defendants Further Retaliated Against Relator by Refusing to hire Him as the
          Senior Logistics Manager for DynCorp Aviation, and Failed to Address His
          Allegations of Retaliation**

434.    DI lacks knowledge or information sufficient to form a belief regarding the truth

of the allegations in Paragraph 434, including allegations related to a purported conversation

between Relator and Mr. Fisher on September 8, 2013 and purported communications from Northrop Grumman employees to Relator, and therefore denies the allegations.

435.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 435, and therefore denies the allegations.

436.    DI admits that Relator emailed Jim Myles and copied Russ Fatum, Vice President of Human Resources, on October 29, 2013 regarding management issues with Northrop Grumman.  DI denies all characterization of those emails.  DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 436, and therefore denies the allegations, except DI denies that any actions related to Relator's employment were taken for any improper purpose.

437.    DI lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 437, and therefore denies the allegations, except DI denies that any actions related to Relator's employment were taken for any improper purpose.

438.    DI admits that Afton Hicks was a Senior Recruiter with Worldwide Recruiting and Staffing Services LLC, which is wholly owned by DI.  DI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 438, and therefore denies the allegations.

439.    DI admits that Relator sent an email on November 1, 2013 to Steven Schorer regarding management issues with Northrop Grumman and forwarded the email chain to Scott Wagner, Program Manager at Northrop Grumman on November 4, 2013.  DI denies all characterizations of those emails.  DI denies the remaining allegations in Paragraph 439.  All allegations not admitted are denied.

## STATEMENT OF CLAIMS

## CLAIM ON BEHALF OF THE UNITED STATES OF AMERICA

**Count I**
**(Against all Defendants)**
**False Claims Act**
**31 U.S.C. §§ 3729(a)(1)(A), (B), (C), (D), (G)**

440.     DI restates and incorporates its responses to paragraphs 1-439 as though fully set forth herein.

441.     DI admits that Relator purports that this is an action for treble damages and penalties pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*  DI denies that Relator has validly stated any claim entitling him to relief.  All allegations not admitted are denied.

442.     DI denies the allegations in Paragraph 442.

443.     DI denies the allegations in Paragraph 443.

444.     DI denies the allegations in Paragraph 444.

445.     DI denies the allegations in Paragraph 445.

446.     DI denies the allegations in Paragraph 446.

447.     In response to the first sentence of Paragraph 447, DI lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies the allegations.  DI denies that it caused any false or fraudulent claims.  DI denies the remaining allegations in Paragraph 447.

448.     DI denies the allegations in Paragraph 448.

449.     DI denies the allegations in Paragraph 449.

450.     DI denies the allegations in Paragraph 450.

**CLAIMS ON BEHALF OF RELATOR FRED MAXEY CLONINGER**

**Count II**
**(Against DynCorp)**
**Violations of the False Claims Act**
**31 U.S.C. § 3730(h)**

451.     DI restates and incorporates its responses to paragraphs 1-439 as though fully set

forth herein.

452.     DI admits that Relator paraphrases and partially quotes 31 U.S.C. § 3730(h)(l).

All allegations not admitted are denied.

453.     DI admits that Relator was an employee of DI.  DI denies that there was any

violation of 31 U.S.C. § 3730(h)(1).  All allegations not admitted are denied.

454.     DI denies the allegations in Paragraph 454.

455.     DI denies the allegations in Paragraph 455.

456.     DI denies the allegations in Paragraph 456.

457.     DI denies the allegations in Paragraph 457.

458.     DI denies the allegations in Paragraph 458.

459.     DI denies the allegations in Paragraph 459.

460.     DI denies the allegations in Paragraph 460.

461.     DI denies the allegations in Paragraph 461.

**Count III**
**(Against Northrop)**
**Violations of the False Claims Act**
**31 U.S.C. § 3730(h)**

462.     DI restates and incorporates its responses to paragraphs 1-439 as though fully set

forth herein.

463.     Count III is only against Northrop Grumman, and, to the extent further response is

needed, DI denies the allegations in Paragraph 463.

464.    Count III is only against Northrop Grumman, and, to the extent further response is needed, DI admits that DI and Northrop Grumman Technical Services, Inc. executed a subcontract to perform work under the CNGS Contract, and that Relator was an employee of DI who was assigned to work on DI's Subcontract.  All allegations not admitted are denied.

465.    Count III is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 465.

466.    Count III is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 466.

467.    Count III is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 467.

468.    Count III is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 468.

469.    Count III is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 469.

470.    Count III is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 470.

471.    Count III is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 471.

472.    Count III is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 472.

**Count IV**
**(Against DynCorp)**
**Wrongful Discharge in Violation of Virginia Public Policy**

473.    DI restates and incorporates its responses to paragraphs 1-439 as though fully set forth herein.

474.    DI admits that Virginia law recognizes an exception to the doctrine of employment-at-will for public policy reasons under certain circumstances.  DI denies the remaining allegations in Paragraph 474.

475.    DI admits that Relator partially quotes Section 18.2-178 of the Virginia Code.  All allegations not admitted are denied.

476.    DI denies the allegations in Paragraph 476.  DI avers that Relator's employment with DI ended when his FSA expired on September 30, 2013.

477.    DI denies the allegations in Paragraph 477.

478.    DI denies the allegations in Paragraph 478.

479.    DI denies the allegations in Paragraph 479.

480.    DI denies the allegations in Paragraph 480.

481.    DI denies the allegations in Paragraph 481.

**Count V**
**(Against Northrop)**
**Tortious Interference with Contract under Virginia Law**

482.    DI restates and incorporates its responses to paragraphs 1-439 as though fully set forth herein.

483.    Count V is only against Northrop Grumman, and, to the extent further response is needed, DI admits that Relator had an employment contract with DI.  All allegations not admitted are denied.

484.    Count V is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 484.

485.    Count V is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 485.

486.     Count V is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 486.

487.     Count V is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 487.

488.     Count V is only against Northrop Grumman, and, to the extent further response is needed, DI denies the allegations in Paragraph 488.

**PRAYER**

With respect to the unnumbered paragraph above Paragraph 1 in Relator's Prayer, DI denies any and all liability with regard to Relator's claims and denies that Relator is entitled to any relief.

1.     DI denies any and all liability with regard to Relator's claims and denies that the Relator is entitled to any relief.

2.     DI denies any and all liability with regard to Relator's claims and denies that the Relator is entitled to any relief.

3.     DI denies any and all liability with regard to Relator's claims and denies that the Relator is entitled to any relief.

4.     DI denies any and all liability with regard to Relator's claims and denies that the Relator is entitled to any relief.

5.     DI denies any and all liability with regard to Relator's claims and denies that the Relator is entitled to any relief.

6.     DI denies any and all liability with regard to Relator's claims and denies that the Relator is entitled to any relief.

## DEMAND FOR JURY TRIAL

DI denies that Relator is entitled to a trial by jury on any and all causes of action arising from his FSA.

DI denies each and every allegation not specifically admitted above.

## DEFENSES

Without assuming any burden of proof that it would not otherwise bear, DI asserts the following defenses:

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted for each of the following, non-exclusive reasons.

First, Relator does not adequately allege that DI presented (or caused to be presented) a materially false claim for payment, knowing that the claim was materially false when it was submitted, as required by 31 U.S.C. § 3729(a)(1)(A).  Second, Relator fails to allege adequately that DI made false records or statements, that any alleged false records or statements were made to the Government, or that any alleged false records or statements were material to any false claims, as required by 31 U.S.C. § 3729(a)(1)(B).  Third, Relator fails to allege an FCA conversion claim as he fails to plead the existence of an obligation to deliver money or property to the Government and fails to allege that DI acted knowingly in failing to fulfill such an obligation, as required by 31 U.S.C. § 3729(a)(1)(D).  Fourth, Relator fails to meet the threshold requirement for a "reverse false claim" under 31 U.S.C. § 3729(a)(1)(G), because his allegations fail to allege that DI had an existing obligation to pay or transmit property or money to the Government.  Fifth, Relator has failed to allege adequately an FCA conspiracy claim under 31 U.S.C. § 3729(a)(1)(C), because he does not adequately allege that there was an agreement

between the Defendants to violate the FCA, that there was an act committed by the Defendants to have a false claim paid, or that the Government was damaged as a result of any purported act.

Further, Relator has failed adequately to plead an FCA retaliation claim against DI. Relator was not fired – his Foreign Services Agreement ("FSA") expired at the end of the one-year term and his position was discontinued because certain property management functions were transferred to a new company – and DI had no obligation to hire him for another position. To succeed on a claim of FCA retaliation, Relator must show that he engaged in protected acts and that he was discriminated against for those protected acts. Relator has not shown either. Relator's FSA was a term agreement with a one-year term, which Relator completed, and provided no promise of future employment beyond September 30, 2013. Further, DI's decision not to enter into a new employment agreement with Relator was not a retaliatory adverse employment action in response to protected activity under the FCA.

Relator has also failed to state a wrongful discharge claim under Virginia employment law. Specifically, Relator failed to demonstrate that he is entitled to the public policy exception to the at-will employment doctrine, as there are no sufficiently pled allegations that criminal conduct occurred in Virginia, or that Relator could have been prosecuted in Virginia for conduct allegedly demanded by DI.

## SECOND DEFENSE

The allegations in the Complaint fail to plead fraud with particularity. The lack of particularity in the Complaint makes it impossible for DI to determine the extent of additional defenses it may have, and DI reserves the right to assert all applicable defenses once the precise nature of the relevant circumstances or events can be determined.

## THIRD DEFENSE

Relator's claims for relief are barred because any actions taken by DI with respect to the subject matter alleged in the Complaint were undertaken in good faith and constitute lawful, proper, and justified conduct.

Relator worked on the CNTPO program for only twelve months during the course of a seven-year contract, and at most, Relator's allegations demonstrate his subjective dissatisfaction with the way in which DI was managing property during that brief period, or, at worst, mismanagement of property on the CNTPO program.  But even Relator's allegations acknowledge that DI was attempting to make the best of the resources it had available to comply with its responsibilities under the Subcontract and CNGS Contract.  *See, e.g.*, Compl. ¶¶ 112, 118.  Notably, even in the very brief period that Relator worked on the CNTPO program, DI allowed Relator to draft a corrective action plan, *see* Compl. ¶ 231, brought in the Buffalo Group to assist with an inventory and did not charge the Government or Northrop for those services, *see id*. at 92 n.6, and used alternative methods to track inventory when necessary, *see, e.g.*, *id*. ¶ 209. DI's efforts to perform as well as it could under the circumstances demonstrates that Relator has failed to allege any intent to defraud the Government or Northrop Grumman.

Accordingly, DI at all times acted in good faith and in accordance with its duties and obligations to the Northrop and the Government under the Subcontract and CNGS Contract, and all applicable government regulations, and Relator has no valid claim against DI.

## FOURTH DEFENSE

The Government knew of the property management concerns and issues on the CNTPO program that Relator alleges, and/or all information material to DI's performance under the Subcontract, and the Government continued to pay for the services and property DI provided, which now bars the Relator from claiming that the problems he raises were material to the

Government's payment decisions.  Moreover, DI relied on the Government's conduct, and so the Relator, on behalf of the Government, is barred from proceeding with his claims under the doctrines of waiver, estoppel and accord and satisfaction.

### FIFTH DEFENSE

Northrop Grumman, as the prime contractor, is responsible for the submission of all invoices to the Government, the management of the CNGS Contract, including all property management functions thereunder, and all damages, if any, suffered by the Government.

### SIXTH DEFENSE

Relator's claims are barred, in whole or in part, by the statute of limitations applicable thereto.  Relator's initial complaint was filed on April 8, 2014.  By way of example, but not by way of exclusion, the six-year statutory period of 31 U.S.C. § 3731(b)(1) applies to this action, and only allegations pertaining to claims for payment submitted after April 8, 2008 are potentially timely.

### SEVENTH DEFENSE

The damages Relator seeks are too speculative and indefinite to be compensable.  For example, but not by way of exclusion, the claimed damages allegedly consist of a "considerable percentage" of the $10 million to $18 million purportedly spent per year for fuel, Compl. ¶ 21, or allegedly are based on Relator's allegations that property management "essentially was not being performed at all," amounting to purported damages of "*approximately* $100 million," *id*. ¶ 167 (emphasis added), and/or consist of "hundreds of millions of dollars" for unspecified "missing property" that DI allegedly failed to maintain, *id*. ¶ 376.  Moreover, Relator's purported damages calculations, which apparently can range from zero dollars to "hundreds of millions of dollars," are based on the false premise that a government contractor is responsible on a dollar-for-dollar basis for any property which is stolen, lost or rendered inoperable, or for which there cannot be a

final accounting, during the course of a complex, multi-year program in a war zone and with participants that include not only other contractors using or managing the same property, but multiple services, agencies and offices of the United States Government, as well as ministries and services of the Afghan Government.

## EIGHTH DEFENSE

The Government failed to mitigate its damages.

## NINTH DEFENSE

The claims in the First Amended Complaint are barred in whole or part because Relator is not an original source and/or because they were publicly disclosed.

## TENTH DEFENSE

The claims in the First Amended Complaint are barred, in whole or part, by Relator's and/or the Government's unclean hands.

## ELEVENTH DEFENSE

The claims in the First Amended Complaint are barred, in whole or part, by the contributory negligence of Relator and/or the Government.

## TWELFTH DEFENSE

The claims in the First Amended Complaint are barred, in whole or part, by the doctrine of laches, because the Government and Relator did not timely assert its or his rights, to the detriment of DI.

## THIRTEENTH DEFENSE

The claims in the First Amended Complaint are barred, in whole or part, because the terms and conditions of the Subcontract, and all task orders associated therewith, are vague and ambiguous.

DI reserves the right to add additional defenses as may become known to DI during discovery and further proceedings.

## **<u>CONCLUSION</u>**

DI reserves the right to amend this Answer and Defenses as this action proceeds.

WHEREFORE, DI denies that the Government is entitled to any relief from DI and demands judgment in its favor, together with all costs of this proceeding (including attorneys' fees) and such other and further relief as the Court deems appropriate.

Dated:  November 3, 2017

Respectfully submitted,

/s/ David M. Nadler
David M. Nadler (Bar No. 402705)
Steven J. Roman (Bar No. 392959)
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201
DNadler@BlankRome.com
SRoman@BlankRome.com

*Counsel for DynCorp International Inc., DynCorp International LLC, and Delta Tucker Holdings, Inc.*